**TROWBRIDGE v. ABRASIVE CO. OF PHILADELPHIA et al.**

No. 10400.

United States Court of Appeals Third Circuit.

Argued April 19, 1951.

Filed July 25, 1951.

Walter B. Gibbons, Philadelphia, Pa. (Philip Price, Philadelphia, Pa., on the brief), T. Ewing Montgomery, Philadelphia, Pa., amicus curiae, for appellants.

Abraham E. Freedman, Philadelphia, Pa. (Freedman, Landy, & Lorry, Philadelphia, Pa., on the brief), for appellee.

Before McLAUGHLIN, STALEY and HASTIE, Circuit Judges.

STALEY, Circuit Judge.

On April 27, 1945, plaintiff, a grinder and chipper then employed by the Northwest Foundry and Furnace Company in Portland, Oregon, was seriously injured because of the disintegration of a grinding wheel which he was using. That is the basis of the action brought below by plaintiff against the Simonds Abrasive Company, defendant, manufacturer of the wheel.[1] The jury returned a verdict of

---

1. Action was originally commenced against a second defendant, the Simonds Saw and Steel Co. The action against that defendant was dismissed.

$126,182.24,[2] and defendant has appealed to this court.

The following are the facts, viewed in a light most favorable to plaintiff. Plaintiff's duties on the day of the accident consisted of grinding off the rough edges from castings by the use of an abrasive wheel attached to a portable pneumatic grinder. This operation is known in the industry as a "snagging operation." The record discloses that plaintiff reported for work at Northwest Foundry at midafternoon on the day of the accident, relieving one Williams, who had been performing identical duties on the prior shift. There is evidence that Williams had attached a new abrasive wheel to the grinder that morning. Plaintiff testified that one-half inch thereof had been ground off during the day. There is an abundance of evidence that plaintiff is an experienced grinder, a conscientious workman, and that he was highly regarded by his fellow employees and by the plant superintendent. There is also evidence that Williams was an experienced grinder. Plaintiff's testimony is that before commencing his snagging operation, he had inspected and tested the grinder and wheel in the customary manner. About a half minute after he started to grind the casting, the abrasive wheel suddenly shattered into many pieces, some of which tore through both of plaintiff's legs three or four inches above the ankles.

Plaintiff was unable to prove, by direct evidence, that any defect existed in this particular wheel. Microscopic tests conducted at Massachusetts Institute of Technology were inconclusive. Plaintiff, however, charges defendant with negligence in its method of manufacture, and in its failure to test its products properly. The nature of the evidence with reference thereto will be discussed later in this opinion.

In an attempt to eliminate the probability of intervening causes, and thus bolster the inference that it was defendant's negligence which caused the disintegration of the wheel, plaintiff introduced evidence as to the life history of this wheel. Cf. Diesbourg v. Hazel-Atlas Glass Co., 3 Cir., 1949, 176 F.2d 410. The record shows that on January 19, 1945, a Portland jobber and distributor received an order from plaintiff's employer for 36 abrasive wheels. The jobber apparently had no wheels in stock and ordered them from defendant-manufacturer. The wheels were shipped to the jobber who, in turn, delivered them to plaintiff's employer on March 1, 1945. The testimony of the general manager of the Portland jobber, taken by deposition, is that the wheels were probably held in its warehouse no longer than 10 or 15 days. The testimony of the superintendent of Northwest Foundry, plaintiff's employer, is that the wheels were kept in a safe place until they were used. The plant maintenance man at Northwest Foundry stated that the grinders were in good condition and were tested properly. There was evidence from which the jury could find that the grinder, at the time of the accident, was operated at a speed less than the maximum recommended by defendant-manufacturer.

Defendant's principal argument on appeal is that there was no evidence of negligence to support a verdict for plaintiff. Its position is that the lower court erred in not granting a judgment n.o.v. or, in the alternative, in not granting a new trial.

■ Since jurisdiction is based on diversity of citizenship,[3] a preliminary word on the applicable law is in order. We look first to the conflict of law rules of Pennsylvania. Klaxon Co. v. Stentor Electric Mfg. Co., 1941, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477. Applying orthodox conflict of law rules, Pennsylvania would refer to the law of Oregon, the place of the wrong.[4] No Oregon cases have been

2. The jury actually returned a verdict of $150,000, from which the trial judge deducted the amount of $23,817.76, representing both the amount of the medical expenses and compensation paid by plaintiff's employer. Plaintiff had signed a covenant not to sue his employer.

3. Plaintiff is a citizen of Oregon; defendant is a Pennsylvania corporation.

4. See Diesbourg v. Hazel-Atlas Glass Co., 3 Cir., 1949, 176 F.2d 410; Moran v. Pittsburgh-Des Moines Steel Co., 3 Cir., 1948, 166 F.2d 908, certiorari denied

found either expressly adopting or disapproving the doctrine of MacPherson v. Buick Motor Co., 1916, 217 N.Y. 382, 111 N.E. 1050, L.R.A.1916F, 696. This court has held, however, that the doctrine of that case has been so widely accepted that it has now become a part of the general law of torts.[5] It has found expression in Section 395 of the Restatement of the Law of Torts. Hence, in the absence of any decisions to the contrary, we assume it to be the law of Oregon [6] that there is a duty on a manufacturer of a chattel to use reasonable care in manufacturing whenever there is an unreasonable risk that the chattel, if defectively made, will cause substantial harm. See Restatement, Torts, § 395.

Defendant argues on appeal that there was no evidence of negligence because no witness identified any defect in the wheel. Defendant's version of the law would cast upon a plaintiff in a case such as this an almost impossible burden; for where an abrasive wheel disintegrates, direct proof of the existence of a defect might be virtually impossible. See Zesch v. Abrasive Co. of Phila., 1944, 353 Mo. 558, 183 S.W.2d 140, 156 A.L.R. 469. The burden of the scientific limitations of our society should not be cast on injured plaintiffs in circumstances such as existed in the instant case.

Plaintiff's proof of negligence rested in great measure on the testimony of an expert in the strength of materials. The expert declared that defendant's method of manufacture, known as the "closed setting," was conducive to the formation of internal flaws, in that gases formed during the curing operation were not permitted to escape as freely as they would in the open method; this entrapment of gas results in a plane of cleavage, an internal fissure or crack, in which no bond occurs between the adjacent grits on each side. The opinion of the expert was that such a defect would result in the disintegration of the wheel when used in the customary manner.

The expert also testified that defendant was negligent in failing to utilize proper tests. It is admitted that defendant, as well as all other members of the abrasive wheel industry, employed only one test to determine internal flaws—the spin test. A wheel subjected to this test is spun at a rotational velocity fifty per cent greater than its highest recommended operating speed. This test is designed to ascertain whether the wheel can properly withstand centrifugal stress. The defendant failed to use due care, in the opinion of the expert, in not attempting to test for the two other stresses which must be expected in a snagging operation, i.e., stress caused by vibration and stress caused by impact or shock. Equipment has been designed to test for these stresses in other industries, and is in common use. Similarly, in the opinion of plaintiff's expert, equipment could be and should be designed to test abrasive wheels. Testimony which may have been most persuasive to the jury was the admission by defendant's director of research and development, on cross-examination, that a wheel used in a snagging operation may have practically no safety factor because of the unusual stresses to which the wheel would be subject.

We believe there was sufficient evidence from which a jury could determine that defendant failed to use due care.

Defendant contends, however, that this evidence is inadmissible because plaintiff's expert was not qualified to testify with respect to practices in the abrasive wheel industry. It is admitted that the expert, one Dr. Peskin, is a graduate engineer, with extensive experience in industry.

1948, 334 U.S. 846, 68 S.Ct. 1516, 92 L. Ed. 1770. See also Restatement, Conflict of Laws, §§ 377, 378.

5. See Sieracki v. Seas Shipping Co., 3 Cir., 1945, 149 F.2d 98, affirmed 1946, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099; Diesbourg v. Hazel-Atlas Glass Co., supra, footnote 4.

6. Bamford v. Van Emon Elevator Co., 1916, 79 Or. 395, 155 P. 373 has been cited for the proposition that the Oregon law is contrary to the rule of the MacPherson case. We do not think the Bamford case so holds.

His specialty is the strength of materials, and he has had considerable theoretical training in that field at Massachusetts Institute of Technology. He was an instructor at that institution, and received his Doctor of Science degree there in 1936. Defendant asserts that Dr. Peskin was not qualified to testify because he has had no practical experience in the manufacture of abrasive wheels.

Defendant's arguments are addressed to the wrong forum. The qualification of an expert is a matter peculiarly within the discretion of the trial judge. It has been reiterated time and again that an appellate court will reverse on this ground only when the decision of the trial judge is clearly erroneous.[7] Bratt v. Western Air Lines, 10 Cir., 1946, 155 F.2d 850, 166 A.L.R. 1061, certiorari denied 1946, 329 U.S. 735, 67 S.Ct. 100, 91 L.Ed. 635; Diesbourg v. Hazel-Atlas Glass Co. supra; Hencken v. Bethlehem Municipal Water Authority, 1950, 364 Pa. 408, 72 A.2d 264.[8] It is hardly within the province of this court to determine what is the optimum degree of specialization in the scientific world. We note in passing, however, that the wider perspective of the broad specialist may be of invaluable assistance to the trier of fact; the narrow specialist, on the other hand, may be limited by occupational myopia. At any rate, these questions are matters for the trial court, and we cannot say that the district court abused its discretion.

Against Peskin's testimony, defendant introduced the testimony of three experts, all of whom were presently employed by manufacturers of abrasive wheels.[9] They gave opinion evidence to the contrary of that of plaintiff's expert. The relative qualifications of the opposing experts and the weight to be given to the opinions of each were, of course, matters for the jury to determine in arriving at its verdict.

Defendant contends that the trial judge, in effect, instructed the jury that they might consider defendant's failure to employ the X-ray test and the ultrasonic test as grounds for negligence. This, defendant argues, was error. These tests were mentioned by plaintiff's expert; the former was virtually abandoned on cross-examination; the expert's position with respect to the feasibility of the ultrasonic test was weakened considerably on cross-examination. The court, in its charge, first noted the tests in the following manner: "Now, there was another test adverted to, the ultrasonic wave test and the X-ray test * * *". Very soon thereafter, the court related in detail that defendant's experts had testified that efforts had been made to use these tests, and both had been abandoned as inapplicable to abrasive wheels. The net effect of the charge cannot be considered prejudicial. Moreover, defendant's failure to take a specific objection to this instruction should preclude it from raising this point on appeal. Federal Rules of Civil Procedure, Rule 51.

The Grinding Wheel Institute, appearing as amicus curiæ, contends that the court erred in its instructions with respect

---

7. Wigmore goes so far as to state that the qualifications of an expert should be left entirely within the discretion of the trial judge, and his discretion should never be disturbed on appeal. 2 Wigmore, Evidence, § 561 (3d ed.).

8. Rule 43 of the Federal Rules of Civil Procedure, 28 U.S.C., authorizes reference to the state rule on admissibility of evidence where the state rule favors reception of the evidence.

9. If we were to declare as a rule of law that one must actually have practical experience in a given industry in order to qualify as an expert in litigation involving its products, we might very well place an onerous burden on plaintiffs in some cases. Where the industry is small and tightly knit, it may be very difficult for the plaintiff to obtain the services of an expert currently employed therein, and it might be equally difficult to find someone who was formerly employed in the industry. But the key experts of an industry would normally be available to the defendant. For example, in the instant case, in addition to the testimony of defendant's own director of research, the defense was bolstered by that of engineers in the employ of two other manufacturers of abrasive wheels.

to the inferences the jury could draw. The exception taken on this point was hardly designed to bring into focus the precise nature of the alleged error. See Palmer v. Hoffman, 1943, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645. Hence, it should not be considered on appeal.

■■■■ The amount of the verdict is challenged by defendant as so shockingly excessive as to warrant the grant of a new trial. There was evidence from which the jury could have found that plaintiff is permanently and totally disabled from pursuing a gainful occupation. Plaintiff, at the time of the accident, was 44 years old. Immediately following the accident, plaintiff was hospitalized for fourteen months and subsequently was subjected to additional hospitalization and medical treatment. Only the most skillful surgery succeeded in saving his legs. His pain and suffering have been very great. He was still suffering at the time of trial from a constant burning, cramping pain in both legs. Blood circulation in his legs is slight; no pulse is even discernible; the nerve supply is greatly diminished. The possibility of his developing gangrene will always be present; hence, amputation of one or both legs is a distinct possibility, if not probability. In fact, one doctor testified that one leg should be amputated immediately. Plaintiff will require future medical and hospital care.

We need not decide, however, whether the verdict is excessive, for this court will not substitute its judgment for that of the jury or the trial court. The question of excessiveness of a verdict is primarily one for the trial court; where, however, the verdict is grossly excessive, the denial by the trial court of a motion for a new trial constitutes such an abuse of discretion that this court will remand the cause for a new trial.[10] A careful study of the evidence of damages in the

record has failed to convince us that the verdict was so grossly excessive as to justify reversal on this ground.

For the above reasons, the judgment of the district court will be affirmed.

10. Dubrock v. Interstate Motor Freight System, 3 Cir., 1944, 143 F.2d 304; Virginian Ry. Co. v. Armentrout, 4 Cir., 1948, 166 F.2d 400; Kos v. Baltimore & O. R. Co., 6 Cir., 1928, 28 F.2d 872; Spero-Nelson v. Brown, 6 Cir., 1949, 175 F.2d 86; Southern Pac. Co. v. Guthrie, 9 Cir., 1951, 186 F.2d 926. This rule is in accord with the implication of the Supreme Court in Affolder v. New York, C. & St. L. R. Co., 1950, 339 U.S. 96, 101, 70 S.Ct. 509, 94 L. Ed. 683.