**Hugh WILSON**

v.

**SAVAGE ARMS CORPORATION.**

**Civ. A. No. 38001.**

United States District Court
E. D. Pennsylvania.

Oct. 31, 1969.

Paul N. Minkoff, Philadelphia, Pa., for plaintiff.

Michael E. Quinlan, Philadelphia, Pa., for defendant.

## OPINION AND ORDER

JOHN W. LORD, Jr., Chief Judge.

Suit was instituted in the above-captioned matter by the plaintiff, Hugh Wilson, against the defendant corporation for injuries sustained on August 1, 1964 in an accident involving a rotary-powered lawn mower. The lawn mower was manufactured by the defendant, Savage Arms Corporation, through a subsidiary, Worcester Lawn Mower Company. Plaintiff, a resident of Philadelphia, purchased the lawn mower as a used piece of equipment from Joseph Richter, Roslyn, Pennsylvania, in June, 1964 and made no repairs or changes on the lawn mower prior to sustaining the injury from the accident at issue.

Prior to the accident, plaintiff had used the mower on three or four occasions to cut the lawn at his residence. On the date of the accident, the plaintiff was at the home of Mrs. Emily Jones, where he was cutting grass for the first time. Plaintiff describes the lawn as having a narrow flat area at the top and a sloping grade from the front of the flat area downward toward the sidewalk at the front of the house. Plaintiff stated that after cutting around the perimeter of the lawn several times and while proceeding in a direction toward the sidewalk, he slipped and his right foot slid under the back of the housing which covers the rotary blade of the mower resulting in the traumatic amputation of the big toe and portions of the second and third toes of his right foot.

As a result of this accident plaintiff instituted the present action against defendant alleging as bases for recovery strict liability under Section 402(a) of Restatement, Torts (Second) and common law negligence. The jury rendered a verdict in favor of defendant. Plaintiff then filed the motion for new trial which is now before the Court for consideration.

In his motion for new trial, plaintiff finds no fault with the charge of the Court to the jury. Plaintiff expressly concedes that the Court correctly charged the jury as to the burden of proof with respect to negligence and strict liability. Moreover he concedes that the Court correctly charged the jury that the defendant is chargeable with information and knowledge as to the engineering and safety factors that are part of design development to *the extent available at the time of manufacture of the machine in question in 1955.* Vroman v. Sears, Roebuck & Co., 387 F. 2d 732, 738 (6th Cir. 1967); E. J. Pontifex v. Sears, Roebuck & Co., 226 F.2d 909, 910 (4th Cir. 1955); *see* Noel v. United Aircraft Corp., 342 F.2d 232, 236 (3rd Cir. 1964).

Though acknowledging that the above propositions are correct under the law, plaintiff contends that the exclusion by

the Court of certain testimony quoted in plaintiff's brief in support of his motion for a new trial effectively precluded the jury from knowing what standards, if any, did exist in the production field in 1955 when the particular machine here involved was designed and manufactured. Specifically, plaintiff's contention is directed at several rulings by the Court at N.T. 190–197 sustaining defendant's objections and thereby excluding certain testimony of Thomas A. Oravecz, plaintiff's expert witness. However, it can readily be seen by reference to these pages of testimony, which are quoted in full in plaintiff's brief, that every one of the eight questions therein to which defendant's objections were sustained requested information or conclusions dealing with *present* standards or principles prevailing at times *subsequent* to the time of manufacture of the lawn mower here involved. See N.T. 190–197. And as indicated above, plaintiff concedes, as indeed he must under the previously cited authorities, that such testimony would be clearly improper. Vroman v. Sears, Roebuck & Co., *supra*; E. J. Pontifex v. Sears, Roebuck & Co., *supra*; see Noel v. United Aircraft Corp., *supra*.

But plaintiff argues that he is not complaining of the Court's failure to permit testimony as to standards or engineering principles as understood at a date subsequent to the date of manufacture of the lawn mower in question, but rather of an asserted refusal of the Court to permit testimony in general as to basic engineering principles as opposed to the specialized knowledge of a lawn mower designer or developer. The direct answer to this point is that, as indicated above, all of the questions dealing with such principles with respect to which plaintiff complains of the Court's ruling in sustaining the defendant's objections did specifically request information as to a state of knowledge at a time subsequent to the date of manufacture of the machine in question (N.T. 190–197). While this fact alone would be sufficient in the opinion of the Court

to dispose of plaintiff's contention that the Court improperly excluded testimony of plaintiff's expert Mr. Oravecz as to general engineering principles, some further considerations bolster the Court's rejection of this contention.

To begin with, Mr. Oravecz quite explicitly stated that he had no information at all as to developments in the field of safety and design of power law mowers which were available to manufacturers in the years 1954, 1955 or 1956 (the lawn mower here involved was designed and manufactured in 1955) (N.T. 149). Moreover he stated that he does not know anything about the design or standards of design of lawn mowers as these existed in 1954 (N.T. 147). He also stated that other than in the present case he had never obtained the plans and specifications of lawn mowers of a particular manufacturer and gone over them (N.T. 148). He admitted that the only time he had done any investigation with respect to lawn mowers prior to this case was in 1962, and that he had no idea of the date of manufacture of the machines he examined at that time (N.T. 148). That investigation had been conducted on behalf of the Commonwealth of Pennsylvania in connection with exploration of the possibility of adoption by the Department of Labor and Industry of standards with respect to lawn mower design (N.T. 138). Other than this single experience, Mr. Oravecz had no other connection with the design of lawn mowers during his employment with the Commonwealth of Pennsylvania or with Berkabile Brothers, his only other employer since his graduation from Penn State University in 1952 (N.T. 146–147).

But plaintiff claims that despite his lack of knowledge in the lawn mower field, a person like Mr. Oravecz with an engineering background should be permitted to testify as to general engineering principles. Otherwise plaintiff warns that the Court will be limited to expert witnesses whose judgment will be biased by "occupational myopia". For this proposition plaintiff relies on the

case of Trowbridge v. Abrasive Co. of Philadelphia, 190 F.2d 825, 829 (3rd Cir. 1951). Aside from the difficulty discussed earlier with respect to the time to which plaintiff's questions were directed, several factors destroy plaintiff's argument based on these principles in the instant case.

In the first place, while the court in *Trowbridge* did recognize the problem referred to above, it simply concluded that the qualifications of an expert and scope of expert testimony are matters peculiarly within the discretion of the trial judge whose rulings should not be reversed except where clearly erroneous, and that to permit testimony as to general principles in that case was not clearly erroneous. Trowbridge v. Abrasive Co. of Philadelphia, *supra* at 829. Secondly, the issue on which the expert's testimony was offered there specifically involved the strength of materials, a field which was a specialty of the expert witness called. *Id.* Third, in this case, while plaintiff's expert admitted, in answer to a question of the Court, that the relevance of the principles involved would depend upon the type of machine used, nevertheless he had obtained no information prior to testifying either through trade journals, technological libraries or otherwise with respect to the design of lawn mowers in 1955 which could form a factual basis for the application of these principles. Fourth, and possibly most important, despite all these difficulties arising from the limitations of Mr. Oravecz's qualifications in testifying as an expert witness on the issues before the Court in this case, actually, he was permitted to testify very extensively as to the application of these general principles with respect to the machine in question.

Mr. Oravecz was permitted to testify as to the mechanism by which the power mower operates, as to the type of engine used, and as to the method for controlling speed (N.T. 150). He was permitted to testify that such a machine should have safety devices to guard against accidents (N.T. 151). He was permitted to testify that the moving blade of the machine can cause injury to the operator (N.T. 152). He was permitted to testify that the machine today is in the same general condition as called for by the plans and specifications (N.T. 154). He was permitted to testify as to the position of the operator when using the machine and that such a position was referred to from the point of view of safety engineering as a "danger point" because of its proximity to the point of operation of the rotating blade. He was permitted to testify as to the change of position of the operator with respect to proximity to the blade depending on the position of the handle, and as to his method of determining this change of position (N.T. 179–180). He was permitted to testify as to the structure and operation of the rotating blade and as to its position when the engine is running (N.T. 183–184). He was permitted to testify as to the structure of the housing and as to the fact that its primary purpose is to protect the operator and other individuals from the whirling blade underneath (N.T. 184). He was permitted to testify as to the fact that the opening of the housing measured from the ground was three quarters of an inch higher than at the front or along the other two sides (N.T. 184–185). He was permitted to testify that this "cutout" at the rear of the machine resulted in a larger opening and greater exposure of the blade than along the sides, and that in his opinion the cutout served no functional purpose but merely increased the danger to the operator (N.T. 185). He was permitted to testify as to the relative positions of the blade and bottom of the housing to establish the extent to which the blade would be unprotected and exposed (N.T. 186–187). (Defendant later brought in evidence to support its contention that the relative position of the blade and bottom of the housing, and therefore the degree of exposure, change when the blade is in motion.) Finally, he was permitted to testify that if certain parts of the mower called the "interior baffle"

and "exterior baffle" had been separated by a greater distance than they were in actuality, the design of the machine would have made a greater contribution to the safety of the operator (N.T. 189).

It can therefore be seen that plaintiff's expert witness was permitted to testify at length and in detail as to structural and safety factors involved in the operation of the power lawn mower involved in this case despite the fact that such testimony was based almost exclusively on general engineering principles because of his very limited experience in connection with the design of lawn mowers. For this reason and all the other reasons previously discussed, plaintiff's motion for a new trial must be denied.