David R. CHRISTNER, Plaintiff,

v.

E. W. BLISS COMPANY, Simbartha, Inc., and E. W. Bliss Division of Gulf & Western Manufacturing Company, Defendants.

Civ. A. No. 79–1066.

United States District Court, M. D. Pennsylvania.

Oct. 22, 1981.

Frank L. Tamulonis, Jr., Zimmerman, Lieberman & Derenzo, Pottsville, Pa., for plaintiff.

Jeffrey B. Rettig, James K. Thomas, II, Harrisburg, Pa., for defendants.

## MEMORANDUM

HERMAN, District Judge.

Plaintiff filed a motion in limine on July 13, 1981, requesting us to hold five areas of inquiry to be inadmissible for any purpose in the pending jury trial. Plaintiff relied on his trial brief to support his motion and Defendants filed their opposing brief on July 31, 1981. Plaintiff requested the ruling on the following matters:

1. That Plaintiff has received, has been entitled to receive, will receive, or will become entitled to receive, benefits of any kind or character from a collateral source, including but not limited to the following:

(a) Benefits from collateral insurance coverage.

(b) Workers' Compensation Benefits.

(c) Unemployment Compensation Benefits.

2. That the Plaintiff's employer, Cole Steel Division of Litton Industries, Inc. or its Workmen's Compensation Insurance Carrier has or may have a subrogation interest in any recovery pursuant to this litigation.

3. Any reference to facts and circumstances surrounding Plaintiff's termination of employment at Cole Steel Division of Litton Industries for a purported violation of safety rules, without reference to the fact that this defense was considered and rejected by the Bureau of Employment Security in awarding Plaintiff Unemployment Compensation Benefits.

4. Any reference to trade custom, industry codes and standards.

5. Any reference to governmental regulations, including but not limited to any regulations of the Pennsylvania Department of Labor and/or regulations

promulgated to the Occupational Safety & Health Act, in seeking to establish the obligation of the employer to provide appropriate guards and safety devices and warnings, on the ground that the duty to provide a nondefective product is not delegable, and without establishing out of the presence of the jury that said regulations were in effect at the time of manufacture.

Defendants concede that categories one and two should be granted. We will proceed, therefore, to a consideration of the remaining areas of inquiry. Since the fourth and fifth categories are offered for the same purpose we will examine the admissibility of industry standards and of government regulations as one issue.

### Admissibility of Circumstances Surrounding Termination of Plaintiff's Employment for Safety Violation

In advancing their assumption of risk defense, Defendants intend to produce evidence to show that Plaintiff knew of safety rules and regulations warning against placing his hands into any moving parts of machinery, that he had been instructed as to proper operating procedures for his machine, and that he was aware of the danger of placing his hand or arm in the die space. Defendants further seek to introduce testimony as to Plaintiff's alleged violation of his employer's safety rules, which allegedly led to his being fired. They contend that reference to a finding of fact by the Bureau of Employment Security rejecting this defense is irrelevant. Plaintiff acknowledges that assumption of risk is an appropriate defense in a products liability action, *Ferraro v. Ford Motors Co.*, 423 Pa. 324, 223 A.2d 746 (1966), but he asserts that the evidence is insufficient as a matter of law to meet the Defendants' burden of proof.

In *Ferraro v. Ford Motors Co.*, 423 Pa. 324, 223 A.2d 746 (1966) the Pennsylvania Supreme Court followed the Restatement (Second) of Torts in permitting an assumption of risk defense to a strict liability action. *Id.* at 327–38, 223 A.2d 746. As formulated by the Restatement, that doctrine states:

If the user or consumer discovers the defect and is aware of the danger, and nevertheless proceeds unreasonably to make use of the product and is injured by it, he is barred from recovery.

Restatement (Second) of Torts § 402A, Comment n.

■ The question is not whether the plaintiff *should have* realized the risk, which would be the issue in determining negligent conduct, but rather, whether the plaintiff *in fact* realized the risk.

The standard to be applied is a subjective one, of what the particular plaintiff in fact sees, knows, understands and appreciates ... If by reason of age, or lack of information, experience, intelligence, or judgment, the plaintiff does not understand the risk involved in a known situation, he will not be taken to assume the risk ....

Restatement (Second) of Torts § 496D, Comment c. *See also Elder v. Crawley Book Machinery Co.*, 441 F.2d 771, 774 (3d Cir. 1971) (inadvertence or inattention does not equal assumption of risk); *Decorative Precast Stone Erectors, Inc. v. Bucyrus-Erie Co.*, 493 F.Supp. 555, 558 (W.D.Pa.1980) (subjective standard), *aff'd*, 642 F.2d 441 (3d Cir. 1981); *Dorsey v. Yoder Co.*, 331 F.Supp. 753, 765 (E.D.Pa.1971) (mere knowledge of risk insufficient), *aff'd*, 474 F.2d 1339 (3d Cir. 1973); *Berkebile v. Brantley Helicopter Corp.*, 462 Pa. 83, 100, 337 A.2d 893 (1975) (subjective appreciation required).

■ In applying this subjective standard, circumstantial evidence may be offered to prove the requisite state of mind. *Campbell v. Nordco Products, Inc.*, 629 F.2d 1258, 1262 (7th Cir. 1980); *Green v. Parisi*, 478 F.2d 313, 315–16 (3d Cir. 1973). To this end, testimony as to Plaintiff's knowledge of safety instructions, *Leach v. Jagenberg-Werke A. G.*, 480 F.Supp. 244, 245 (E.D.Pa. 1979), and work rules, *Campbell v. Nordco Products, Inc.*, 629 F.2d 1258, 1261 (7th Cir. 1980), is relevant evidence. The question of the Plaintiff's appreciation of the danger as a result of his acquaintance with these rules

is a jury issue. *See Schell v. AMF, Inc.*, 567 F.2d 1259, 1261–62 (3d Cir. 1977); *Green v. Sanitary Scales Co.*, 431 F.2d 371, 374 (3d Cir. 1973). The number, timing and sufficiency of the warnings bear upon the weight of the evidence and not upon its admissibility.

Because proof of assumption of risk requires a showing of a subjective understanding and voluntary acceptance of the danger only those facts and circumstances in existence prior to or at the time of the accident are probative of the requisite state of mind. The fact that Plaintiff's employer *subsequently* determined that a safety violation had occurred and fired Plaintiff has nothing to do with Plaintiff's state of mind. The termination of Plaintiff's employment, for whatever reason, and the decision by the Bureau of Employment Security are clearly collateral matters that would only serve to confuse the jury and prejudice the Plaintiff's case.

*Admissibility of Trade Customs, Industry Codes, and Government Regulations*

Defendants characterize the power press in this action as a multi-purpose machine that is "completed" by the individual purchaser who supplies the specific die, actuation and feed devices, and "point of operation" guards to meet his needs. They seek to offer into evidence American National Standards Institute safety requirements, National Safety Council standards, testimony as to trade customs, and state and federal regulations to support the defense that the obligation to guard the power press rested with the Plaintiff's employer. The Plaintiff argues that evidence of industry standards and government regulations is probative of a standard of care, and, therefore, inappropriate in a strict liability action.

Although it is certainly true that industry standards or trade customs as indicators of the reasonableness of the defendant's conduct have no place in the law of strict liability in tort, *Holloway v. J. B. Systems, Ltd.*, 609 F.2d 1069, 1073 (3d Cir. 1979), such evidence is admissible to determine the stage at which a safety feature is generally installed when several parties have made substantial contributions to the finished product. *Verge v. Ford Motor Co.*, 581 F.2d 384 (3d Cir. 1978). In *Verge v. Ford Motor Co.*, the court outlined three factors as "crucial" to the allocation of responsibility for the absence of a safety device:

1. Trade custom—at what stage is that device generally installed.

2. Relative expertise—which party is best acquainted with the design problems and safety techniques in question.

3. Practicality—at what stage is installation of the device most feasible.

*Id.* at 387 (citations omitted).

Once the customary stage is identified, the producer responsible for that stage is held strictly liable for the failure to provide a safety device. *Holloway*, 609 F.2d at 1073.

Plaintiff argues that the Defendants cannot exculpate themselves by placing responsibility for the absence of guards on Plaintiff's employer because "the duty to provide a non-defective product is non-delegable." *Berkebile v. Brantley Helicopter Corp.*, 462 Pa. 83, 103, 337 A.2d 893, 903 (1975). In this case, however, the question at issue is whether the product was defective at all at the time the Defendants placed the press in the stream of commerce. Thus, the evidence of trade customs and safety regulations is not offered to prove due care, or even intervening negligent conduct, but rather to show that the absence of "point of operation" guards at the time of sale did not render the press "defective" within the meaning of § 402A. *Verge*, 581 F.2d at 386 n. 2. If the jury finds, therefore, that the power press in the instant case was not a completed product when it left the hands of the Defendants, the jury may then consider such factors as trade custom, safety codes, laws and regulations, the relative expertise of the parties, and the practicalities of the situation in order to determine who was responsible for providing "point of operation" safeguards. *See*

**1126**

*Powell v. E. W. Bliss Co.*, No. 77–696, slip op. at 4 (E.D.Pa. June 19, 1981).

Plaintiff contends that if industry practices and government regulations are admissible evidence, then only customs, laws and standards in effect at the date of manufacture, 1916, are relevant to the allocation of responsibility for providing safety devices. Defendants, on the other hand, insist that the date of the injury, September 17, 1977, is the relevant cut-off point. Defendants rely on a footnote in *Heckman v. Federal Press*, 587 F.2d 612, 616 n.2 (3d Cir. 1979), which suggests that state regulations could be admitted in the retrial of that case if the defendant establishes a proper foundation showing their existence prior to the purchase *or* the accident.

 Clearly, if the power press in this action was defective because it lacked "point of operation" guards at the date of manufacture, subsequent regulations directing employers to provide safety guards on mechanical power presses would not absolve Bliss of responsibility. Section 402A explicitly defines the event triggering liability as the *placement* of a defective product in the marketplace. Restatement (Second) of Torts § 402A, comment g. Moreover, the analysis applied by the VERGE court is markedly similar to that used in a "state of the art" defense. The absence of "point of operation" guards is analogous to a design defect. In such cases, the law charges the manufacturer with information and knowledge regarding design development to the extent available *at the time of manufacture* of the machine in question. *See Wilson v. Savage Arms Corporation*, 305 F.Supp. 1163, 1164 (E.D.Pa.1969). In *Wilson*, the court held that references to subsequent industry standards were properly excluded. *Id.* at 1165. *See also Vroman v. Sears, Roebuck & Co.*, 387 F.2d 732, 737–38 (6th Cir. 1967).

In a case almost identical to the one now before the court, *Powell v. Bliss*, No. 77–696 (E.D.Pa. June 19, 1981) Judge Ditter of the Eastern District found that the jury could properly consider industry codes promulgat-ed after the date of manufacture. In POWELL, however, an earlier code existed that did not explicitly place responsibility on any one party. The subsequent code was admitted to clarify the ambiguity of the standards *in effect at the time of manufacture*. *Id.* slip op. at 11.

 Thus, the Defendants here may introduce evidence of trade customs, safety standards and government regulations providing that they can show that the standards shed light on the situation in 1916. The evidence must be linked in some manner to the date of manufacture in order to be relevant for purposes of allocating responsibility for providing "point of operation" guards.