**DORNEY PARK COASTER COMPANY, INC.**

v.

**GENERAL ELECTRIC COMPANY.**

Civ. A. No. 85–2437.

United States District Court, E.D. Pennsylvania.

June 30, 1987.

A. Richard Bailey, Philadelphia, Pa., for plaintiff.

Francis Quinn, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

TROUTMAN, Senior District Judge.

As the result of a fire which occurred on plaintiff's property, a popular amusement park located near Allentown, Pennsylvania, the plaintiff seeks damages contending that the fire was caused by a defective deep fat fryer, Model HK3, designed, manufactured in 1955 or 1956, and ultimately sold by defendant General Electric Company (GE). The plaintiff seeks to hold GE strictly liable for said property damage pursuant to Section 402A of the Restatement (Second) of Torts.[1] The parties agree that the law of Pennsylvania applies to this case.

It is undisputed that the fire originated in the deep fat fryer manufactured by GE. On September 28, 1983, one of plaintiff's employees, as part of the park's "winterization" process, turned the subject fryer on and set the thermostat at 300°F. He did this to allow the congealed oil to liquify so that he could drain the oil and clean the fryer. After he turned on the fryer, he left the foodstand in which the fryer was located so that he could commence the same process with other deep fat fryers located in other areas of the park. Approximately fifteen minutes later, the fire was discovered.

Subsequent investigation lead to the conclusion that the contacts within the thermostat of the fryer had welded together, thereby permitting an uninterrupted flow of electricity to the fryer's heating element which allowed the cooking oil in the fryer to heat to the point of self-ignition.[2] The plaintiff contends that the fryer was defective when placed in commerce by GE because it did not incorporate into the fryer any "safety high limit temperature device which would have operated to terminate electric current to the heating element and prevent an overtemperature condition and resulting self-ignition of the oil ..." (Plaintiff's Sur Reply Memorandum of Law, Doc. #56, p. 3). GE presently seeks summary judgment on various grounds.

We may grant summary judgment only if there are no genuine issues of material fact, and if the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; see also, Tigg Corporation v. Dow Corning Corporation, 822 F.2d 358 (3d Cir. 1987).

## I. Section 402A and Social Policy.

GE first contends that it should not be held strictly liable for the plaintiff's losses as a matter of social policy. Here, GE argues that in light of, inter alia, the fact that the fryer was 27 years old, that the original thermostat had been replaced and that the plaintiff had failed to properly maintain the fryer, the risk of loss should not be placed upon it. GE further argues that it was not required to supply a product which would not wear out.

In Azzarello v. Black Bros. Co., Inc. (Azzarello), 480 Pa. 547, 391 A.2d 1020 (1978), the Pennsylvania Supreme Court stated that the question whether "an ill-conceived design which exposes the user to the risk of harm entitle(s) one injured by the product to recover" and the question "when does the utility of a product outweigh the unavoidable danger it may pose" are "questions of law", the resolution of

---

1. The plaintiff has abandoned all other theories of recovery it originally asserted against GE.

2. The parties agree that the thermostat was not the original device contained in the fryer when the product was sold by GE, but rather, was a thermostat manufactured in 1964. The record does not disclose whether the 1964 thermostat was manufactured by GE or some other entity.

which depends upon an examination of applicable "social policy". 391 A.2d at 1026.[3] The court further stated that,

> It is a *judicial function* to decide whether, under plaintiff's averment of the facts, recovery would be justified; and only after this *judicial determination* is made is the cause submitted to the jury to determine whether the facts of the case support the averments of the complaint.

*Id.* (Emphasis added).

The language quoted above has caused some concern among trial courts as to its exact meaning. The Third Circuit Court of Appeals, in *Hammond v. International Harvester, supra,* decisively concluded, in interpreting *Azzarello,* that,

> This issue of whether the risk of loss should be placed on the supplier is a question of law for the court to decide with an eye toward the 'social policy' underlying Pennsylvania products liability law. (citation omitted). The trial court must exercise its own judgment in determining whether the facts alleged by plaintiff, if true, would justify imposition of strict liability. Only after the court answers that question in the affirmative may it turn the case over to the jury for a determination as to whether the facts alleged are true.

691 F.2d at 650.

Another panel of the Third Circuit and at least one panel of the Pennsylvania Superior Court have not drawn the same clear message from the Pennsylvania Supreme Court's *Azzarello* decision. In *Hollinger v. Wagner Mining Equipment Company,* 667 F.2d 402 (3d Cir.1981), a divided panel of the Third Circuit noted that it need not decide the issue whether a federal court sitting in diversity is required to follow the unreasonably dangerous-defective condition dichotomy established in *Azzarello* in determining the respective responsibilities of judge and jury. 667 F.2d at 410 n. 11. Similarly, in *Burch v. Sears, Roebuck and Co., et al.,* 320 Pa.Super. 444, 467 A.2d 615 (1983), Judge Wieand in his dissent expressed his distress that the panel's majority was implicitly adopting a rule that the language of *Azzarello* was not to be followed literally. As stated by Judge Wieand,

> The trial court did not make a determination of strict liability in this case but submitted it to the jury to determine whether strict liability should attach to a 1963 electric mower marketed without a deadman's switch. This, according to my understanding of *Azzarello,* was error.

467 A.2d at 629; *see also,* 467 A.2d at 619 n. 1.

Despite judicial conflicts and inconsistencies, we adopt the analysis previously applied by this Court in *Wieder v. Towmotor Corp.,* 568 F.Supp. 1058 (E.D.Pa.1983), *aff'd. mem.* 734 F.2d 9 (3d 1984); *see also, In re Air Crash Disaster At Manheim, Germany,* 586 F.Supp. 711 (E.D.Pa.1984) (allegations constituted sufficient basis for submitting to the jury the issue whether the helicopter was designed defectively) and *Pearsall v. Emhart Industries, Inc.,* 599 F.Supp. 207 (E.D.Pa.1984) (smoke and heat alarms were unreasonably dangerous in design, in malfunctioning during a fire and because of manufacturer's failure to include proper instructions).

Applying this analysis to the case *sub judice,* we believe that the existence of genuine issues of material fact precludes us from granting the defendant's summary judgment motion. It is indeed true, as the defendant argues, that it was under no obligation to design and manufacture a product which would not wear out. Despite the defendant's assertions that such natural deterioration caused the fire in question, that is not the only inference or conclusion which may be drawn from the record before us. Importantly, we also find no evidence of record upon which to conclude that the plaintiff failed to properly maintain the fryer. Further, the fact that the product in question was 27 years old does not alone justify the conclusion that the risk of loss may not be placed upon the defendant. *See, e.g., Clarke v.*

---

**3.** For a history of the development of products liability law, specifically Section 402A, in Pennsylvania, see *Hammond v. International Harvester Co.,* 691 F.2d 646 (3d Cir.1982).

*General Motors Corp.,* 430 F.Supp. 1124, 1129 (E.D.Pa.1977), in which this Court stated that "extended use or lapse of time is (not) the sole criteria to be used. Convincing proof of an original defect will overcome lapse of time or use". The issue is whether the product in question failed to function properly because of normal wear and tear or whether it failed because of an inherent defect in its design. *See, e.g., Abdul-Warith v. Arthur G. McKee and Company,* 488 F.Supp. 306 (E.D.Pa.1980), *aff'd. mem.,* 642 F.2d 440 (3d Cir.1981).

The instant case is analogous to *Burch v. Sears, Roebuck and Co., supra.* In *Burch,* the plaintiff premised his 402A claim on the theory that the electric lawn mower which caused his injuries was defectively designed because it lacked a "deadman's switch" which would have automatically turned the mower off when the operator released the controls. The mower had twice shut off while Burch was mowing his lawn and would not restart until he pushed the reset button. When the mower shut off a third time, Burch, without depressing the reset button, proceeded to turn the mower on its side and reached in to remove clumps of grass in order to unclog the rotor blade. The motor restarted, thereby severely injuring Burch's hand. On appeal from the trial court's denial of their motions for judgment *n.o.v.,* the defendants argued that the plaintiff had failed to prove that the mower was defective because it lacked a "deadman's switch". In rejecting the defendants' argument, the Superior Court stated that, viewing the contradictory expert testimony as to the feasibility and utility of incorporating a deadman's switch into the mower's design, in the light most favorable to the plaintiff, it was "satisfied that the jury could reasonably conclude that failing to provide the *extra safety margin* afforded by the dead-

man's switch rendered the produce *unsafe*". 467 A.2d at 618. (Emphasis added).

We also find *Burch* enlightening because the plaintiff recovered under a theory which might best be described as alleging a "secondary" design defect. The plaintiff did not argue that the mower's restart button or some other component was defective. In fact, there appears to have been no explanation as to why the motor restarted. As noted by the Superior Court,

> (plaintiff) asserted not an unexplained malfunction but a specific design defect—the lack of a deadman's switch as a safeguard against *inadvertent restarting ... regardless of why the motor stalled,* the jury had a reasonable basis to conclude that such stalling was foreseeable to the sellers and that the unchanged design lacking a deadman's switch failed to protect against *uncontrolled restarting.*

467 A.2d at 620. (Emphasis added); *see also,* 467 A.2d at 624, in which Judge Wieand in his dissent states, "At the time of the accident, according to the evidence, the original switch was no longer on the machine, having been replaced by another".[4]

In sum, we cannot conclude, on the basis of the present state of the record, that the product in question is not unreasonably dangerous. Therefore, the defendant is not entitled to judgment as a matter of law on the basis of social policy.

## II. *Negligence Per Se.*

■ GE next argues that it is entitled to summary judgment on the ground that the plaintiff's failure to install an automatic fire suppression system as allegedly required by a local township ordinance constituted negligence *per se.*[5]

---

**4.** Similarly, in *Abdul-Warith v. Arthur G. McKee and Company, supra,* the district court, though granting the defendant's summary judgment motion in that case, recognized that,

> ... the failure to incorporate an alternative safety device could constitute a design defect only where the product, even with a functioning primary safety system, would nevertheless be unreasonably dangerous.

488 F.Supp. at 314.

**5.** The parties dispute whether the plaintiff was in actual violation of the South Whitehall Township ordinance. They also dispute whether such a fire suppression system, even if it had been installed and operating on the day of the fire, would have, in fact, extinguished a fire of this nature. For purposes of this motion, we as-

As recognized by counsel for GE, contributory negligence is not a defense to a 402A action in Pennsylvania. Our research has not disclosed an instance in which a Pennsylvania court has been required to decide whether a plaintiff's *per se* negligence may be asserted as a defense to a 402A action. Thus, we are left to predict how the Pennsylvania courts would rule on this issue.

In support of its contention that the plaintiff should be precluded from recovering by virtue of its failure to install an automatic fire suppression system, the plaintiff cites, *inter alia*, the case of *Harless v. Boyle-Midway Division, American Home Products*, 594 F.2d 1051 (5th Cir. 1979). We find *Harless* to be inapposite to the facts before us. In that case, according to our reading of the Fifth Circuit's decision, the plaintiff had not asserted a cause of action under 402A, but rather, had merely alleged *"simple and culpable negligence* on the part of the inhalation of its product ..."* 594 F.2d at 1053. (Emphasis added). Thus, since the plaintiff's cause of action sounded in negligence, as opposed to strict liability, the issues of fault, reasonableness and duty were pertinent to the case, and more importantly, the defendant could assert the plaintiff's own negligence as a defense to the *negligence* asserted against it.

Therefore, the issue is whether the courts of Pennsylvania would distinguish between simple negligence and negligence *per se*, and allow the latter to be asserted as a defense to a 402A action. We do not believe that the Pennsylvania courts would recognize such a distinction. The critical point is not whether the plaintiff's negligence should preclude it from covering, but whether the issue of fault, albeit in the form of *per se* negligence, should be inject-

ed into a 402A action. The Pennsylvania courts have conclusively stated that such an issue has no place in a strict liability case.

This is not to say that the plaintiff's conduct is irrelevant or that evidence of the plaintiff's violation of the South Whitehall Township ordinance would not be admissible at trial.[6] A product is defective only if it is not safe for its *intended* use. Therefore, to the extent GE claims that utilization of the fryer, without an automatic fire suppression system, constitutes a misuse or an abnormal use of the product, it appears that evidence of the plaintiff's failure to use such a system is admissible to demonstrate the lack of a defect in the product or a lack of proximate cause between the alleged defect and the plaintiff's injuries. *See, e.g., Lewis v. Rego Co.*, 757 F.2d 66 (3d Cir.1985).[7] It is for a jury to determine whether the product in question was defective and whether the defect, if any, was the proximate cause of the plaintiff's injuries.

GE also argues that this Court should consider the plaintiff's violation of the fire code in determining whether, as a matter of social policy, the risk of loss should be placed upon GE. Were we to agree, the determination whether the product was safe for its intended use, *i.e.*, whether the product was unreasonably dangerous, would depend upon the county or municipality in which the product was being used, and whether that municipality had enacted legislation similar to that here involved. Thus, it would be possible that one of two identical products, both incorporating an identical design defect, would be found to be unreasonably dangerous in one location in Pennsylvania and found not to be unreasonably dangerous in another location. Social policy would not be served by such a result.[8]

sume, without deciding, that the plaintiff was in actual violation of the ordinance.

6. We specifically state that we do not rule upon the issue of whether GE may at trial introduce evidence of the existence of the ordinance itself and its alleged violation or whether it may only introduce evidence simply that the plaintiff failed to use such a system.

7. We note that misuse or abnormal use will negate liability only where such misuse or abnormal use was not reasonably foreseeable by the supplier. *See, e.g., Lewis v. Rego, supra.*

8. Based on our decision, we need not and do not reach the issue of whether the plaintiff's conduct, in fact, constituted negligence *per se*. We also express no opinion as to whether negligence *per se* remains a viable legal concept in

III. *Assumption of the Risk.*

While, as stated earlier, the plaintiff's contributory negligence is not a defense to a 402A claim under Pennsylvania law, assumption of the risk constitutes a valid defense to such an action. Thus, a plaintiff is precluded from recovering under a theory of strict liability "if he knows of the specific defect eventually causing his injury and voluntarily proceeds to use the product with knowledge of the danger caused by the defect(s)." *Davis v. R.H. Dwyer Industries, Inc.,* 548 F.Supp. 667 (E.D.Pa. 1982); *see also,* Restatement (Second) of Torts, § 402A, Comment n. Further, as stated by the court in *Christner v. E.W. Bliss Co.,* 524 F.Supp. 1122 (M.D.Pa.1981),

> The question is not whether the plaintiff *should have* realized the risk, which would be the issue in determining negligent conduct, but rather, whether the plaintiff in fact realized the risk.
>
> The standard to be applied is a subjective one, of what the particular plaintiff in fact sees, knows, understands and appreciates ... If by reason of age, or lack of information, experience, intelligence, or judgment, the plaintiff does not understand the risk involved in a known situation, he will not be taken to assume the risk....
>
> Restatement (Second) of Torts § 496D, Comment c.

*Id.* at 1124. (Emphasis in original.); *see also, McLaughin v. Fellows Gear Shaper Co.,* 786 F.2d 592 (3d Cir.1986).

> Counsel for GE argues that,
> Simply by virtue of the existence of an ordinance requiring the use of the back-up safety system (*i.e.,* an automatic fire suppression system), Dorney Park should be charged with *constructive knowledge* of the danger and the need for the use of the safety equipment required by the ordinance.

(Defendant's Motion for Summary Judgment, Doc. # 36, p. 32.) In the preceding paragraph of its memorandum of law, however, GE recognizes that the issue is, as

light of the fact that Pennsylvania has statutorily adopted the principles of comparative negli-

stated above, whether the plaintiff, *in fact,* realized the risk involved. (*id.*) Therefore, we cannot, at this stage of the proceeding, accept GE's "constructive knowledge" argument.

■ As to "assumption of the risk", GE has couched the issue in terms of whether the plaintiff assumed the risk of damage by operating the fryer without utilization, in conjunction therewith, of an automatic fire suppression system manufactured by some other entity. Under this theory, the question whether the fryer was defectively designed becomes irrelevant. The plaintiff, to the contrary, has phrased the question in terms of whether it assumed the risk of damage by continuing to utilize the product with the subjective knowledge that it was defective because it did not possess a high temperature cut-off device. Under either theory, genuine issues of material fact exist as to the plaintiff's subjective knowledge, thus precluding the entry of summary judgment for the defendant.

IV. *Conclusion*

For the reasons heretofore stated, we find and conclude that the defendant is not entitled to summary judgment. An appropriate order follows.