**Robert HOFFMAN and Florence Hoffman, Plaintiffs,**

v.

**NIAGRA MACHINE AND TOOL WORKS CO., Defendant.**

**Civ. A. No. 85–1920.**

United States District Court, E.D. Pennsylvania.

Feb. 8, 1988.

Jerry Snyder, Allentown, Pa., for plaintiffs.

Francis Deasey, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

TROUTMAN, Senior District Judge.

On September 4, 1987, following four (4) days of trial, a jury returned a verdict in the above-captioned action in favor of the defendant Niagra Machine and Tool Works ("Niagra") and against the plaintiffs Robert and Florence Hoffman. Judgment was entered thereon accordingly. Presently before us is the plaintiffs' Motion For A New Trial or Judgment N.O.V. Unfortunately, plaintiff's counsel has not submitted a memorandum of law in support of his Motion. As a result thereof, and understandably so, defendant's counsel has also not submitted a memorandum of law in support of Niagra's response to the plaintiffs' Motion.

On August 19, 1982, plaintiff Robert Hoffman, while operating a multi-purpose "punch press" at his place of employment, was severely injured when the press activated and descended while his right hand was within the area of operation, i.e., between the "die" attached to the press's "ram" and the bed of the press. The accident resulted in the amputation of the plaintiff's right ring finger, right little finger and one-half of his right middle finger. The plaintiffs instituted this action against Niagra, the manufacturer of the punch press, pursuant to the Restatement (Second) of Torts § 402A, claiming that Niagra had placed the press in the stream of commerce while in an unreasonably dangerous, defective condition. Specifically, the plaintiffs claimed that the press was defective both in its design and in the fact that proper warnings were not attached to the product.

At trial, Niagra primarily defended the case on the theory that the press, as sold by it, was not a "completed" product, and therefore, the responsibility for installing adequate point of operation safety devices and warnings rested with someone other than it, e.g., Robert Hoffman's employer or the manufacturer of the die which was attached to the press. See, e.g., Rooney v. Federal Press Co., 751 F.2d 140, 143 n. 3 (3d Cir.1984); Heckman v. Federal Press Co., 587 F.2d 612 (3d Cir.1978); Verge v. Ford Motor Co., 581 F.2d 384 (3d Cir.1978); Field v. Omaha Standard, Inc., 582 F.Supp. 323 (E.D.Pa.1983); Lesnefsky v. Fischer & Porter Co., Inc., 527 F.Supp. 951 (E.D.Pa.1981); Powell v. E.W. Bliss Co., 529 F.Supp. 48 (E.D.Pa.1981); and Christner v. E.W. Bliss Co., 524 F.Supp. 1122 (M.D.Pa.1981).

The plaintiffs, in support of their Motion For A New Trial, initially contend that we erred in permitting counsel for Niagra to introduce testimony as to trade custom and industry standards. At trial, in the form of a Motion In Limine, the plaintiffs asserted that we should preclude the introduction of such evidence based on the Pennsylvania Supreme Court's recent decision in Lewis v. Coffing Hoist Division, Duff-Norton Co., Inc., 528 A.2d 590 (Pa.1987). Since it is undisputed that we must apply the laws of Pennsylvania in this diversity action, we must abide by the Pennsylvania Supreme Court's decision in Lewis to the extent that it is applicable to this case.

In *Lewis*, the trial court, pursuant to the plaintiff's motion in limine, precluded the defendant from introducing into evidence proof of its compliance with industry-wide standards, practices and customs in the design of the allegedly defective product. The trial court reasoned that to admit such evidence would inject into the case concepts of negligence law, and that under the Pennsylvania Supreme Court's decision in *Azzarello v. Black Bros. Co.*, 480 Pa. 547, 391 A.2d 1020 (1978), such concepts have no place in a case sounding solely under § 402A. Over strong dissents from Justices Flaherty and Hutchinson (now a Judge with the United States Court of Appeals for the Third Circuit), with the latter stating his desire to "speak out against the madness", 528 A.2d at 596, the Pennsylvania Supreme Court held that "the trial court properly excluded the (defendant's) evidence of industry standards and practices relating to the design of control boxes for electric hoists". *Id.* at 592. The majority reasoned by syllogism that, accepting the major premise that the negligence concept of reasonable care has no place in a strict liability case and the minor premise that "industry standards" go to the manufacturer's reasonableness in making its design choice, it could only conclude that evidence of such "industry standards" was irrelevant in a § 402A case, and hence, inadmissible. *See also, Santiago v. Johnson Machine and Press Corp.*, 834 F.2d 84 (3d Cir.1987).

■ Despite the plaintiffs' interpretation to the contrary, we do not believe that the *Lewis* decision represents a complete bar to the admissibility of evidence of industry standards and trade custom. As stated by the Third Circuit Court of Appeals in *Verge v. Ford Motor Co.*, *supra*, a "design defect case of this type involves two primary issues: (1) Was there a defect?; (2) If so, who is responsible for it?" 581 F.2d at 386. In *Lewis*, the defendant sought to introduce evidence of trade custom and industry standards with regard to the former question, *i.e.*, in support of its contention that the hoist was not defectively designed. In the case *sub judice*, Niagra sought to introduce evidence of trade custom and industry standards only with regard to the latter question, *i.e.*, in support of its contention that the press, as sold by it, was not a completed product and that the responsibility for Robert Hoffman's injuries, if any, lay with the manufacturer of the "die" attached to the press or Robert Hoffman's employer.

At least two other federal district court judges applying Pennsylvania law have been faced with this exact same question, and in both instances, they concluded that, where a jury finds that the allegedly defective product was not a completed product when it left the defendant's control, the jury may consider such factors as trade custom, safety codes, laws and regulations, the relative expertise of the parties, and the practicalities of the situation in determining who bore the responsibility for installing "point of operation" safety devices. *See Christner v. E.W. Bliss Co.* (Ditter, J.), *supra*, and *Powell v. E.W. Bliss Co.* (Herman, J.), *supra*. In both *Christner* and *Powell*, as here, the defendant manufacturers sought to introduce evidence of trade custom and industry standards not with regard to their "reasonableness" in failing to provide adequate warnings and point of operation safety devices, but only as to the question of whom the jury should impose liability upon if they found the press had been manufactured in more than one stage.

We find nothing in *Lewis*, *supra*, which dictates a result different from that reached by us during the trial of this matter and by the two district court judges in *Christner* and *Powell*. For the reasons stated above, we find that the evidence to which the plaintiffs object was completely admissible for the limited purpose for which the defendant introduced it.

Likewise, we find no error in the manner in which we charged the jury on this point. In the portion of our charge in which we defined the term "defect", we specifically directed the jury that:

The fact that the Defendant may have followed customary methods of manufacture and design does not, however, furnish a conclusive or controlling test as to

whether the machine was defective. If you find the machine left the Defendant's hands in a defective condition, the fact that it was designed or manufactured in accordance with methods used by other manufacturers at the time does not alter the quality of the Defendant's acts.

To recover on this theory and under this rule (*i.e.*, § 402A), the Plaintiff is not required to prove that the Defendant is negligent or careless in any way. But, the Defendant can be liable to the Plaintiff even though the Defendant exercised all possible care under the circumstances.

(See Notes of Testimony, Doc. # 25, p. 67.)

In the portion of our charge in which we instructed the jury on Niagra's contention that the press was not a completed product when it left its control, we stated as follows:

If you find that the press was not a completed product, you must then determine whether the Defendant or the owner of the press, *i.e.*, the Plaintiff's employer, was responsible for providing proper safety devices to make the press safe for its intended use.

Now, in determining who bore the responsibility of installing adequate safety devices, you may consider such factors as trade custom, at what stage the device is generally installed, safety codes, regulations, the relative expertise of the Defendant versus the owner of the press, *i.e.*, which party is best acquainted with the design problems and safety techniques in question; and, finally, the practicalities of the situation, at what stage is installation of a device most feasible.

If you determine that the press as sold by the Defendant was not a completed product, and that the owner of the press, that is, the plaintiff's employer, rather than the Defendant bore the responsibility of the installation of adequate safety devices, then you must find that the product as sold by the Defendant was not a defective product.

On the other hand, if you determine as the Plaintiff contends that the press as sold by the Defendant was a completed product you need only determine whether the product was defective, as that term has already been defined, when it left the Defendant's control.

(See Notes of Testimony, Doc. # 25, pp. 70–71.)

Based on the portions of our charge quoted above, we believe we clearly and concisely instructed the jury that it could consider evidence of trade custom and industry standards *only* after it had determined that the press as sold by Niagra was not a completed product and that such evidence should play no role in its determination of whether the press was, in fact, defective in the first instance.

■ The plaintiffs next argue that they are entitled to a new trial on the ground that we erred in allowing Niagra's counsel to utilize a mechanical model of a foot pedal in front of the jury for demonstration purposes. The plaintiffs contend that, since the defendant failed to demonstrate that the model was specifically identical to the mechanical foot pedal on the punch press upon which Robert Hoffman was injured, we should have precluded the defendant from using the model. (See Notes of Testimony, Doc. # 24, pp. 43–46.)

Niagra contended at trial that the "mechanical foot pedal" which activated a revolution of the press and which was on the machine when sold by Niagra had been removed and replaced by a "pneumatic foot switch". Through the introduction of evidence to this effect, Niagra sought to demonstrate that the press had been substantially altered after it left its control, thereby relieving it of any liability for Robert Hoffman's injuries. Specifically, Niagra asserted that had the mechanical foot pedal not been removed, the accident would not have occurred, since the downward force required to activate the press *via* a mechanical foot pedal is much greater than the minimal force necessary to activate the press *via* a pneumatic foot switch.

We find no error in our allowing the defendant to utilize the model. Based on the limited purpose for which defendant's counsel used the model, we do not believe that the plaintiffs were in any way preju-

diced. We recall no instance in which Niagra's counsel attempted to mislead the jury into believing that the model was an exact replica of the mechanical foot pedal which was attached to the press when it was sold, nor did defendant's counsel mislead the jury into believing that the pressure required to depress the model foot pedal to the floor matched that which would have been required to depress the foot pedal which would have been on the machine had it not been removed and replaced with a pneumatic foot switch. To the contrary, Niagra's counsel utilized the model only to demonstrate the height to which the press operator was required to raise his foot in order to work the pedal and the distance the pedal had to be depressed in order to activate a revolution of the press.

■ The plaintiffs' third and final argument in support of their Motion For A New Trial is that we erred in the manner in which we charged the jury as to the effect of "substantial modifications" to the press after it left Niagra's control. *See, e.g., Hanlon v. Cyril Bath Co.,* 541 F.2d 343 (3d Cir.1975). The plaintiffs assert that our charge was erroneous because we failed to specifically charge the jury that post-delivery modifications to an allegedly defective product will relieve the manufacturer of liability only where the modifications are a "superseding, intervening" cause of the plaintiff's injuries.

In *Eck v. Powermatic Houdaille,* 364 Pa.Super. 178, 527 A.2d 1012 (1987), the Pennsylvania Superior Court also faced the question of how a jury should be charged in a § 402A case as to the defense of substantial modification. The Superior Court in *Eck* concluded that the trial court had erred in charging the jury as to the effect of post-delivery alterations to an allegedly defective product, because it instructed the jury that *any* substantial change in the product would relieve the defendants of liability regardless of whether it was a superseding cause of the user's injuries. *See also, Thompson v. Motch & Merryweather Machinery Co.,* 358 Pa.Super. 149, 516 A.2d 1226 (1986). As stated

by the Superior Court, a manufacturer may be relieved of liability only if: (1) the product was substantially altered after it left the manufacturer's control; (2) the modifications were not foreseeable to the manufacturer; and (3) the changes to the product were a superseding cause of the user's injury.

Examining our charge as a whole, we do not believe that we erred in the manner in which we charged to the jury on this issue. While we admittedly did not utilize the "superseding, intervening cause" language urged by plaintiffs' counsel, we find that our charge sufficiently expressed the point that the jury could not find for the defendant simply because Robert Hoffman's employer had somehow modified the press; rather, the alteration would only relieve Niagra of liability under this theory if it were a substantial factor in bringing about the plaintiffs' injuries, *i.e.,* the alteration created the defect which was the proximate cause of the plaintiffs' injuries.

Finally, as to the plaintiffs' Motion For Judgment N.O.V., we see no grounds to grant the plaintiffs' Motion. There are any number of bases, entirely supportable by the record, upon which the jury could have concluded that Niagra was entitled to a verdict in its favor. Hence, we deny the plaintiffs' Motion For Judgment N.O.V.