**Paul J. KERN and Joyce A. Kern, his wife, Plaintiffs,**

**v.**

**NISSAN INDUSTRIAL EQUIPMENT COMPANY and NPC Leasing Corp., Defendants.**

**Civ. A. No. 1:CV–91–1066.**

United States District Court, M.D. Pennsylvania.

Sept. 30, 1992.

---

David W. Knauer, Mechanicsburg, Pa., for plaintiffs.

William J. Ricci, George J. Lavin Jr. Associates, Philadelphia, Pa., John J. Bateman, Marie Sambor Reilly, Richard B. Wickersham, Jr., Lavin, Coleman, Finarelli & Gray, Philadelphia, Pa., for defendants.

NPC Leasing Corp., pro se. C. Kent Price, Thomas, Thomas & Hafer, Harrisburg, Pa., for NPC Leasing Corp.

## MEMORANDUM

RAMBO, Chief Judge.

Before the court is Plaintiffs' motion *in limine* to preclude Defendant from introducing evidence that plaintiff Paul Kern's co-worker was negligent. Defendants have submitted a response, and the motion is now ripe for consideration.

## BACKGROUND

Plaintiff Paul J. Kern alleged in his complaint that on July 28, 1989, he was injured at his work place when a fellow employee—Mr. Charles Kessler—backed up a Nissan forklift over his feet. Complaint at ¶ 11. He allegedly backed over Mr. Kern's legs a second time in an attempt to move the forklift. Defendant's brief at 3. These injuries precipitated the captioned action against the maker and the lessor of that forklift. Plaintiffs assert that defects in the forklift—lack of auditory or visual warning systems—caused Mr. Kern's injuries. Complaint at ¶¶ 7, 8, 10. Defendant submitted an amended answer asserting in its third and fourth defenses that Mr. Kessler's negligence rather than any alleged defect may have proximately caused these injuries.

## DISCUSSION

Defendants intend to introduce evidence that Mr. Kessler's negligence proximately caused Mr. Kern's injuries. Specifically they plan to show that Mr. Kessler backed up the subject forklift without looking behind him and failed to see Mr. Kern until after running over his feet. Exacerbating the injuries, he ran over Mr. Kern's legs again in an attempt to extricate his coworker.

Originally, Plaintiffs brought the captioned action under several legal theories, one of which was negligence. Upon a request from this court to specify exactly which legal theories are now being asserted, Plaintiffs have limited their claim against Defendants to strict liability, breach of warranty, loss of consortium, and punitive damages; they dropped their claim sounding in negligence.

### I. Negligence principles in product liability cases.

In 1966, Pennsylvania adopted § 402A of the Restatement (Second) of Torts imposing strict liability upon manufacturers of defective products. *Webb v. Zern,* 422 Pa. 424, 220 A.2d 853, 854 (1966). Section 402(A) provides:

> (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
> (a) the seller is engaged in the business of selling such a product, and
> (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
> (2) The rule stated in Subsection (1) applies although
> (a) the seller has exercised all possible care in the preparation and sale of his product, and
> (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

Restatement (Second) Torts § 402A (1965).

Since adopting this rule, Pennsylvania case law has consistently precluded use of negligence principles in strict liability litigation. As one court has forcefully concluded, "The Pennsylvania Supreme Court, perhaps more than any other state appellate court in the nation, has been emphatic in divorcing negligence concepts from product-liability doctrine." *Conti v. Ford Motor Co.,* 578 F.Supp. 1429, 1434 (E.D.Pa. 1983), *rev'd on other grounds,* 743 F.2d 195 (3d Cir.1984), *cert. denied,* 470 U.S. 1028, 105 S.Ct. 1396, 84 L.Ed.2d 784 (1985) (citations omitted). *See, e.g., Berkebile v. Brantly Helicopter Corp.,* 462 Pa. 83, 337 A.2d 893, 900 (1975) (plurality opinion) (trial court erroneously used reasonable man standard in product liability action); *McCown v. Int'l Harvester Co.,* 463 Pa. 13, 342 A.2d 381, 382 (1975) (contributory negligence defense inapplicable in strict liability action as would conflict with purposes of § 402A); *Lewis v. Coffing Hoist Div., Duff–Norton Co.,* 528 A.2d 590, 594 (1987) (evidence of industry standards impermissibly injected negligence theory into defective product action); *Azzarello v. Black Brothers Co.,* 480 Pa. 547, 391 A.2d 1020, 1027 (1978) (trial court erroneously instructed jury to consider whether defect was *"unreasonably* dangerous").

Likewise, Pennsylvania's Superior Court has followed the direction of the Supreme Court. *See, e.g., Staymates v. ITT Holub Indus.,* 364 Pa.Super. 37, 527 A.2d 140, 143 (1987) (comparative negligence principles inapplicable in product liability suit); *Carrecter v. Colson Equip. Co.,* 346 Pa.Super. 95, 499 A.2d 326, 330–31 (1985) (state of the art defense improper in defective design suit).

The federal courts interpreting Pennsylvania law in diversity actions, as well, have prohibited introduction of negligence principles in strict liability actions. *See, e.g., Dorney Park Coaster Co. v. General Electric Co.,* 669 F.Supp. 712, 716 (E.D.Pa.1987) (negligence *per se* not permissible defense in product liability action); *Vizzini v. Ford Motor Co.,* 569 F.2d 754, 768 (3d Cir.1977) (non-use of seatbelts inadmissible in product liability action); *Baker v. Outboard Marine Corp.,* 595 F.2d 176, 182 (3d Cir.

1979) (reversible error to instruct jury that liability attaches only if defect "unreasonably dangerous"); *Holloway v. J.B. Systems, Ltd.,* 609 F.2d 1069, 1073 (3d Cir. 1979) (evidence and jury instructions regarding negligence concepts to be kept out of § 402A cases).

## II. Admissibility of Negligence to Show Causation in Product Liability Action.

### A. *Mr. Kessler's Inattention.*

 In a strict liability action, the plaintiff bears the burden of showing that the product was defective and that the defect proximately caused the injuries at issue. *Berkebile,* 337 A.2d at 898; *Carrecter,* 499 A.2d at 329; *Van Buskirk v. Carey Canadian Mines, Ltd.,* 760 F.2d 481, 492 (3d Cir.1985). A question arises whether the defendant can offer rebuttal evidence of negligence on the part of the plaintiff or a third party to show that it, not the alleged defect, proximately caused the harm suffered.

The Third Circuit has recently considered this question in *Dillinger v. Caterpillar, Inc.,* 959 F.2d 430 (3d Cir.1992), *reh'g denied.* In *Dillinger,* the plaintiff was injured when the engine stalled in his truck, causing a backward descent down a hill. He applied the brakes, but they failed due, as later discovered, to damaged hydraulic lines. *Id.* at 432–33. The descent ended in a collision, and his resulting injuries precipitated a strict liability action. At trial, defendants maintained that the plaintiff's failure to use alternative braking systems and to read the operator's manual and his lack of driving experience "caused" his injuries. *Id.* at 440. The trial court admitted evidence regarding plaintiff's alleged negligence as relevant to the cause of the accident. *Id.* at 440. The Third Circuit reversed on this point, concluding that such evidence was inadmissible as it injected contributory negligence principles into the product liability action. *Id.* at 446.

In *Dillinger,* however, the *alleged defect set into motion* the series of events leading to the plaintiff's injuries. *Id.* at 442. That is, the defect initiated the descent down the hill, during which the plaintiff's negligent conduct became an issue. The *Dillinger* court clearly distinguished between its facts and cases, such as in the captioned one, where the *alleged contributory negligence precipitated a series of events* resulting in the harm to the plaintiff. The court made such statements as: "[H]ere the evidence was compelling that the defect which resulted in the hose damage, rather than Dillinger's conduct, triggered the accident ...," *id.* at 442; "[W]here, as here, the asserted negligence is the inability of the plaintiff to prevent injury or harm triggered by a defective product...," *id.* at 443 n. 22; "Dillinger's conduct was merely insufficient to arrest the accident set in motion by the allegedly [defective equipment]," *id.* at 444.

In contrast, Mr. Kessler's inattention in the captioned case actively contributed to the initial, factual cause of the accident. The series of events allegedly began with Mr. Kessler failing to watch where he was going, which was exacerbated by the absence of any warning signals, which was followed by the collision and injuries. Thus, *Dillinger* does not specifically address the current issue.

Several Pennsylvania courts have grappled with the specific issue of admissibility of negligence evidence relevant to initial causation. While the Pennsylvania Supreme Court has said little on the issue, it appears to be in agreement with a series of Superior Court rulings on the question. In *McCown v. Int'l Harvester Co.,* 463 Pa. 13, 342 A.2d 381, 382 (1975), the plaintiff was driving a tractor and negligently collided with a guardrail. During the collision the defective steering wheel struck the plaintiff's arm causing him injuries. *Id.,* 342 A.2d at 381. The Pennsylvania Supreme Court refused to permit a contributory negligence defense in the case. It concluded that such a defense would either require a comparative negligence analysis, or provide a complete defense to the manufacturer, either result being, in the eyes of the court, contrary to the purposes of strict liability. *Id.,* 342 A.2d at 382.

The *McCown* court never addressed the issue of whether the same evidence could be introduced to rebut causation. But the concurring opinion did state:

> ... negligence in the use of a product may have a bearing on the question *whether a defect in a product was the legal cause of the plaintiff's injury....* although such negligence is not *per se* a bar to recovery, it may nevertheless have that effect in a proper case *where it negates an essential element of the cause of action.* I do not read the opinion of the court as suggesting anything to the contrary.

*Id.,* 342 A.2d at 384 (Pomeroy, J., concurring) (emphasis added).

Several state superior court cases have more specifically addressed the issue in the captioned case.[1] In *Foley v. Clark Equip. Co.,* 361 Pa.Super. 599, 523 A.2d 379, *allocatur denied,* 516 Pa. 614, 531 A.2d 780 and 516 Pa. 641, 533 A.2d 712 (1987), the plaintiff was struck by a forklift when its driver failed to look for pedestrian traffic upon crossing a walkway. *Id.,* 523 A.2d at 381. However, the plaintiff argued that the accident was primarily caused by defects in the forklift—absence of warning devices, lack of written warnings of the dangers, and obstructions to the driver's view. *Id.,* 523 A.2d at 381. The trial court charged the jury not to consider inattention of the plaintiff and the co-worker; subsequently, the jury returned a verdict for the plaintiff. *Id.,* 523 A.2d at 382–84. The Pennsylvania Superior Court determined that evidence of inattention was indispensable in determining causation and therefore granted a new trial. *Id.,* 523 A.2d at 381. It concluded that admission of this evidence was consistent with § 433 of the Restatement of Torts which mandates that the jury is to determine whether a defect is a substantial factor in causing the plaintiff's injuries. The court explained:

> Although the trial court did not usurp the jury's function by determining the cause of the accident, it excluded from the jury's consideration evidence which was essential to make such a determination. In deciding whether the alleged defects in the forklift truck were a substantial factor in causing Foley's injuries, *it was important for the jury to consider 'the number of other factors which contribute[d] in producing the harm and the extent of the effect which they [had] in producing it.'* Restatement (Second) of Torts § 433(a). Arguably, the activities of Foley and Keefer prior to the accident were factors which either contributed to or solely caused the accident. *Their inattention and not the design of the forklift truck may have been the legal cause of the accident.* Trucks, like automobiles, can be designed to reduce the dangers inherent in their operation, but *no design, however perfect, has yet been able to eliminate the risk which rides with inattention.* When another driver or pedestrian is inattentive at the same time as the operator, an accident is likely to occur irrespective of the presence of wider visibility, mirrors, lights, or horns.

*Id.,* 523 A.2d at 394 (emphasis added).

*Dillinger* criticized *Foley* as being contrary to Pennsylvania Supreme Court precedent. *Dillinger,* 959 F.2d at 442–43. Nonetheless, the differing result in *Foley* was unnecessary to the holding in *Dillinger.* As the court in *Dillinger* noted, the facts in *Foley* were distinguishable, as are the facts in the captioned case, since *Dillinger* dealt with allegedly negligent conduct which failed to arrest an accident *already* set in motion by the defect. *Id.* at 444. Thus, the *Dillinger* court's commentary on *Foley* was merely dicta unnecessary to its holding and unpersuasive to this court.

*Foley* is consistent with other Pennsylvania Superior Court decisions regarding admissibility of negligence to the question of proximate causation. For example, in *Bascelli v. Randy, Inc.,* 339 Pa.Super. 254, 488

---

**1.** "An intermediate appellate state court ... is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *West v. American Telephone & Tel. Co.,* 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940).

A.2d 1110 (1985) the court held that evidence that the plaintiff was travelling over 100 m.p.h. on his motorcycle was relevant to causation of the subsequent accident and injuries and thus was improperly excluded by the trial court in the defective product action. *Id.,* 488 A.2d at 1113.[2] Though the plaintiff's actions could not be used to demonstrate contributory negligence, the court determined that such evidence could be introduced to show causation, a jury issue. *Id.,* 488 A.2d at 1113. Citing *Oehler v. Davis,* 223 Pa.Super. 333, 298 A.2d 895, 895 (1972), the court explained that "the progress of the law in extending liability without fault to product suppliers [has not been] in disregard of fundamentals pertaining to the tort law of causation." *Id.,* 488 A.2d at 1113.

Similarly, in *Gallagher v. Ing,* 367 Pa.Super. 346, 532 A.2d 1179, 1183 (1987), *appeal denied,* 519 Pa. 665, 548 A.2d 255 (1988), the blood alcohol level of the decedent was deemed properly admitted in a defective design case to show causation of an automobile accident. The court concluded that "the evidence was sufficient, if believed, to show that the decedent was so intoxicated that he was incapable of driving safely and that this was the legal cause of his loss of control of the vehicle which he was driving." *Id.* at 1183. *See also, Brandimarti v. Caterpillar Tractor Co.,* 364 Pa.Super. 26, 527 A.2d 134, 138 (1987), *allocatur denied,* 517 Pa. 629, 539 A.2d 810 (1988) ("inquiry as to plaintiff's use of the product is relevant as it relates to causation"), and in the Third Circuit, *Greiner v. Volkswagenwerk Aktiengeselleschaft,* 540 F.2d 85, 89–90 (3d Cir.1976) (where plaintiff was passenger in car that overturned, court held evidence that driver was drinking admissible as pertinent to causation).[3]

### B. *Evidence that Mr. Kessler Backed over Mr. Kern a Second Time.*

■ Defendants intend to introduce evidence that after Mr. Kessler initially struck Mr. Kern, he jumped off the forklift, saw his co-worker lying on the ground, got back onto the forklift, and, in trying to drive forward away from Plaintiff, moved in reverse, running over Mr. Kern a second time. Defendant's brief at 3. Introduction of this evidence is problematic.

Assuming arguendo that Mr. Kessler's initial inattention proximately caused the subsequent accident, then his additional negligence in running over Mr. Kern a second time is irrelevant. Proof that Mr. Kessler proximately caused the injuries would relieve Defendants from all liability precluding consideration of his subsequent negligence.

On the other hand, assuming that the defect, and not Mr. Kessler, proximately caused the accident, then *Dillinger v. Caterpillar, Inc.,* 959 F.2d 430 (3d Cir.), *reh'g denied,* forbids introduction of that subsequent negligence.

In *Dillinger,* the court considered the admissibility of two sets of evidence, both analyses being applicable in the captioned action. First, the court considered the admissibility of evidence that the plaintiff failed to use alternative braking systems, failed to read an operator's manual, and had limited truck driving experience. *Id.* at 440–44. The court concluded that these acts of negligence could not be used to show causation as to do so would inject contributory negligence into the strict liability proceeding. *Id.* at 444. As previously discussed, the court differentiated between acts that initially set an accident into

---

**2.** As the court in *Dillinger* observed, *Foley* relies on *Greiner v. Volkswagenwerk Aktiengeselleschaft,* 540 F.2d 85 (3d Cir.1976), which was decided prior to *Azzarello,* a case expanding the dimensions of § 402A. See *Dillinger,* 959 F.2d at 441–42. The court will address this observation in footnote 3, *infra.*

**3.** The court in *Dillinger* criticized *Greiner* as being decided prior to the seminal case of *Azzarello,* 391 A.2d 1020. *Azzarello* has been interpreted as significantly strengthening the man-

date to exclude evidence of negligence in product liability actions. However, several of the cases cited above permitting introduction of plaintiff's actions to show causation, were decided after the 1978 case of *Azzarello. See, e.g., Foley,* 523 A.2d 379, *Bascelli,* 488 A.2d 1110, and *Gallagher,* 532 A.2d 1179. Thus, it appears that *Azzarello,* while clearly stating the law as to the inadmissibility of evidence of contributory negligence, did not change the law regarding admission of such evidence to show causation.

motion, and those which arise after a defect has precipitated the incident. *Id.* at 442–44. Finding that the questioned evidence fell into the latter category, the *Dillinger* court held that the evidence was not admissible. *Id.* at 444.

Analogously, in the captioned case, if the absence of warning signals initially set the accident into motion, then evidence that Mr. Kessler ran over plaintiff Kern a second time falls into the latter category. And *Dillinger* mandates that evidence in this second category—negligence occurring after the defect initiated the accident—is inadmissible in a strict liability action. *Id.* at 444. Therefore, applying *Dillinger*, this evidence may not be introduced.

*Dillinger* also considered a second set of evidence: the plaintiff's failure to use a seatbelt at the time of the accident. *Id.* at 435–40. The trial court had permitted introduction of this evidence, but admitted it for the limited purpose of mitigating damages. *Id.* at 435. The appellate court, however, determined that this decision was erroneous. *Id.* at 437–40. Citing *Vizzini v. Ford Motor Co.*, 569 F.2d 754 (3d Cir. 1977), the court explained that the concept of avoidable consequences—post-accident negligence that aggravates an injury—is analogous to that of contributory negligence, and, like the latter, should be excluded in strict liability actions. *Dillinger*, 959 F.2d at 438–39. Even if the evidence is *only being used to mitigate damages, Dillinger* determined that the evidence was inadmissible because strict liability is, with a few, clearly delineated exceptions, incompatible with negligence concepts. *Id.* at 438–39.

Hence, in the captioned action, assuming that the defect proximately caused the resulting accident and injuries, the fact that Mr. Kessler ran over Mr. Kern a second time would only be relevant to mitigate damages, a purpose which *Dillinger* clearly holds is insufficient to permit introduction of such evidence. Therefore, under the second analysis of *Dillinger*, like the first, evidence of that Mr. Kessler ran over Mr. Kern a second time is inadmissible.

III. Third Party Negligence.

The fact that a third party, and not the plaintiff, was responsible for the intervening negligence in the captioned case is of no import. Cases involving third party involvement have not utilized a different analysis in determining the admissibility of negligence evidence to show proximate causation in a product liability suit. For example, in *Baker v. Outboard Marine Corp.*, 595 F.2d 176, 180 (3d Cir.1979), the defendant argued that a third party's negligence in operating a lawn mower, not a mower defect, caused the resulting injuries to the plaintiff. The court warned that the jury must be apprised of the limited use of the negligence evidence, but nonetheless, permitted introduction of the information. *Id.* at 183. No particular consideration was given to the fact that a third party, rather than the plaintiff, was allegedly negligent.

Similarly, in *Eshbach v. W.T. Grant's & Co.*, 481 F.2d 940, 941 (3d Cir.1973), the manufacturer of a lawn mower asserted that a child's injuries resulted not from alleged defects in the mower, but from her grandfather's intervening negligence. The Third Circuit held that it was reversible error for the trial court not to properly instruct the jury as to the limited relevance of a third party's negligence in a product liability action. *Id.* at 945. Nonetheless, the court went on to explain that the jury could be instructed to consider the evidence since it could be relevant as to the causal link between the alleged defect and the injuries suffered. *Id.* at 944. Again, the court did not discuss the significance of the third party in its analysis of the negligence.

Even in *Conti*, 578 F.Supp. at 1432, a case which held that evidence of intervening negligence *could not be introduced*, the court did not analyze the admissibility question differently because a third party, not the plaintiff, acted in the allegedly negligent fashion. While this court cites *Conti* as an example of the identical analysis used when third party negligence is at issue, the court fails to find the holding of *Conti* persuasive in light of Pennsylvania case law cited herein.

## IV. Applicability of Workers' Compensation Act.

 Plaintiffs contend that 77 P.S. § 481(b) of the Workers' Compensation Act applies to the captioned case and precludes introduction of Mr. Kessler's negligence. This section provides:

(b) In the event injury or death to an employee is caused by a third party, then such employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to receive damages by reason thereof, may bring their action at law against such third party, but the employer, his insurance carrier, their servants and agents, employees, representatives acting on their behalf or at their request shall not be liable to a third party for damages, contribution, or indemnity in any action at law....

Pa.Stat.Ann. tit. 77, § 481(b) (1974). This authority is inapposite to the issue raised by the current motion. This statute concerns the liability of employers to third parties under workers' compensation schemes. The cases that Plaintiffs cite in interpreting this statute similarly refer to the liability of employers to third parties. *See, e.g., Hamme v. Dreis & Krump Mfg. Co.,* 512 F.Supp. 944 (M.D.Pa.1981), *aff'd,* 716 F.2d 152 (3d Cir.1982) (joinder of employer as a party-defendant barred due to absolute statutory immunity); *Heckendorn v. Consolidated Rail Corp.,* 502 Pa. 101, 465 A.2d 609 (1983) (same); *Hefferin v. Stempkowski,* 247 Pa.Super. 366, 372 A.2d 869 (1977) (same).

 However, the captioned case does not involve a joinder of Mr. Kern's employer. Moreover, statutory immunity of plaintiff Kern's employer does not *per se* preclude admission of employer or co-worker negligence in a suit against a third party. *See, e.g., Stolarik v. Hendrick Mfg. Corp.,* 767 F.Supp. 88 (M.D.Pa.1991), *aff'd without opinion,* 961 F.2d 210 (3d Cir.1992) (trial court properly refused plaintiff's requested instructions that employer's statutory immunity from suit made employer's negligence irrelevant in strict liability action); *Brescia v. Ireland Coffee–Tea, Inc.,*

73 F.R.D. 673, 678 (E.D.Pa.1977) (not error for defendant to argue that third-party's actions wholly responsible for plaintiff's injuries, even if that third party immune from suit). Therefore, Plaintiffs' argument based on the cited workers' compensation statute does not preclude a conclusion by the court that evidence of Mr. Kessler's alleged negligence may be introduced.

## CONCLUSION

The case law clearly indicates the following: Plaintiffs bear the burden of showing that the Nissan forklift which Mr. Kessler was operating at the time of the accident was defective. They must also show that this defect proximately caused Mr. Kern's injuries.

To rebut this causal link between the defect and harm, Defendants may introduce evidence of Mr. Kessler's alleged negligence and inattention. This evidence serves not to provide an improper contributory negligence defense, but is admissible solely to rebut Plaintiff's theory of proximate causation.