Gerard **FARRA**, et al., Plaintiffs,

v.

**STANLEY–BOSTITCH, INC.,** Defendant.

Civ. A. No. 92–995.

United States District Court,
E.D. Pennsylvania.

Dec. 6, 1993.

As Modified Dec. 9, 1993.

George F. Schoener, Jr., M. Mark Mendel, Ltd., Philadelphia, PA, for plaintiffs.

John P. Penders, Charles W. Craven, Juliana M. Petito, Marshall, Dennehey, Warner, Coleman and Goggin, Philadelphia, PA, for defendant.

## MEMORANDUM

ROBRENO, District Judge.

In this product liability case, the jury returned a verdict in favor of defendant. Plaintiffs have filed a motion for judgment as a matter of law or, in the alternative, a new trial. For the following reasons, plaintiffs' motion will be denied.

## I. BACKGROUND

Plaintiff Gerard Farra ("Farra") is the owner and operator of a roofing business. While installing a roof on a residence, Farra[1] was shot in the elbow with a roofing nail driven by a pneumatic nail gun, model number N55C–1 (the "nail gun"), which Farra had accidentally discharged. The nail gun was manufactured and designed by a corporate predecessor of defendant Stanley–Bostitch, Inc. ("Stanley").

The events leading up to Farra's injury are not in serious dispute. On the day of the incident Farra was installing shingles on a twelve pitch roof, a roof that is slanted, vis-à-vis the ground, at an angle of 45 degrees. Farra testified at trial that this pitch was so steep as to require the use of "roof jacks" to allow Farra to stand on the roof while applying shingles. A roof jack is a device that contains a metal bar that, when fastened to the roof, protrudes out from the roof at an angle nearly parallel to the ground. Two roof jacks are placed at the same vertical height on a roof, but several feet apart from either other horizontally. A plank is then rested on the two metal bars protruding out from the roof, allowing the roofer to stand on the plank while performing work on the roof.

On the date of the incident, Farra was installing shingles, as it was his practice, by making use of what amounted to a stairway of planks going up the roof. Each "stair," i.e., plank, was approximately four feet away from the stair above and below. Farra testified that, when using this method to apply shingles, he would place a bundle of shingles on the stair on which he was standing, apply shingles to the area of the roof that was within his reach, move the bundle of shingles to the next highest plank, climb to the next highest plank, apply shingles to the area within his reach from the new plank, and continue so on, until he reached the top of the roof. When the roof was completed, the roof jacks and planks would be removed without damaging the roof.

Farra installed the shingles by nailing them to the roof with the nail gun manufactured by Stanley. In order for the nail gun to be operational, three steps must be taken: 1) a hose feeding compressed air must be attached to the gun, 2) the gun's trigger must be depressed, and 3) the gun's "contact trip" must be depressed. The contact trip is a sort of plunger attached to the barrel of the nail gun; the plunger will depress upon the application of eight to ten pounds of pressure. Farra testified that it was his habit to hang the nail gun on the roof jack supporting the plank immediately above the plank on which he was standing when the gun was not needed. He did this by resting the nail gun on the metal bar protruding out from the roof. This was possible because Farra did not "fully plank" his roof jacks, i.e., the plank he used was not wide enough to completely cover the metal bar protruding from the roof. Since the plank had to rest against the roof to prevent shingles from sliding between the plank and the roof, the disparity between the plank's width and the length of the bar re-

---

1. Gerard Farra's wife asserted a loss of consortium claim that has no relevance to the instant motion; accordingly, references to "Farra" in this Memorandum are references to Gerard Farra.

sulted in a two-and-one-half to three inch gap between the end of the metal bar and the end, width-wise, of the plank. It was in this gap that Farra hung the nail gun by placing the trigger on top of the metal bar. The weight of the gun pushing down on its trigger resulted in the trigger being depressed when hung in this fashion. Farra testified that while he hung the nail gun this way "hundreds of times," he never realized that the gun's trigger became depressed through this method of hanging. *See* Tr. of 12/1/92 at 45–64.

The incident *sub judice* occurred after Farra, while standing on a plank and having hung the nail gun in his habitual manner with the gun's trigger depressed as it rested on a higher roof jack, reached down to pick up a bundle of shingles in order to place them on the next highest plank. Farra bent from the waist to pick up the bundle, and, as he stood up, his elbow hit the trip mechanism with enough force to depress it. Since the gun's trigger was also depressed (by virtue of the manner in which the nail gun was hung), and since the air hose was connected, depression of the trip mechanism caused the nail gun to fire a nail into Farra's elbow.

Farra contended at trial that there were four separate defects in the nail gun. First, Farra claimed the nail gun was defective because it was equipped with a contact trip, as opposed to a "sequential trip" firing mechanism. A sequential trip is one that would require the trip mechanism to be depressed *before* the trigger in order for the nail gun to fire. The parties stipulated that a sequential trip in the nail gun would have prevented the accident in this case. Evidence admitted at trial showed that Stanley manufactures a sequential trip nail gun, and, indeed, holds a patent on the sequential trip firing mechanism. Second, Farra claimed the nail gun was defective because it did not contain a trigger guard, i.e., some sort of physical barrier around the trigger to prevent it from being hung in the manner employed by Farra. Third, Farra claimed that the nail gun was defective because it did not require the operator to press a button on the trigger in order to fully depress the trigger. Fourth, Farra claimed the nail gun was defective

because it did not come with a hook attached to it from which the gun could be hung without the need to depress the gun trigger.

Stanley defended on the grounds that the nail gun was safe for its intended use. Stanley claimed this intended use was "bump firing," which allowed the nail gun's operator to fire nails repeatedly by "bumping" the trip mechanism while continuously holding down the trigger. *See* Tr. of 12/2/92 at 182–85. Bump firing is not possible with a sequential trip nail gun, and Stanley pointed out that bump firing is faster than firing performed without continuous trigger depression. As to Farra's other claims, Stanley claimed that the nail gun could be safely hung in a number of ways other than that used by Farra, making a hook unnecessary, and that the trigger was sufficiently protected from inadvertent depression by other parts of the gun, making a trigger guard or a button unnecessary. Stanley also claimed that Farra had misused the product, and had assumed the risk of his own injury.

At the close of Stanley's case, Farra made a motion for judgment as a matter of law that the Court denied. *See* Tr. of 12/3/92 at 47, 56. The case was submitted to the jury on written interrogatories. *See* Fed.R.Civ.P. 49(b). The jury answered the first interrogatory in the negative, finding that Farra had failed to prove his prima facie case and thus returning a verdict in favor of Stanley. *See id.;* Appendix *infra* (reprinting the written interrogatories). Farra now asserts a number of grounds in support of his motion for judgment as a matter of law or, in the alternative, a new trial. The motion is properly before the Court, Farra having made a motion for judgment as a matter of law at the close of defendant's case, which the Court denied, and the jury having returned a verdict against the plaintiff. Plaintiff's request for a new trial in the alternative is also properly presented. *See* Fed.R.Civ.P. 50(b), 59(a)-(b).

## II. STANDARD OF REVIEW

 Judgment as a matter of law is appropriately granted where "there is insufficient evidence from which a jury could reasonably find for the [nonmovant]." *Laskaris*

*v. Thornburgh,* 733 F.2d 260, 264 (3d Cir.), *cert. denied,* 469 U.S. 886, 105 S.Ct. 260, 83 L.Ed.2d 196 (1984). In evaluating the motion, a court must review all the evidence presented during the course of the trial in the light most favorable to the prevailing party, in this case, Stanley, *see id.,* and must draw all inferences in its favor, *see In re Air Crash Disaster at Mannheim, Germany,* 769 F.2d 115, 123 (3d Cir.1985), *cert. denied sub nom. Schoenborn v. Boeing Co.,* 474 U.S. 1082, 106 S.Ct. 851, 88 L.Ed.2d 891 (1986). Where the motion is made by the party who bore the burden of proof at trial, as it is here, it will be granted only ·under exceptional circumstances. *See Link v. Mercedes–Benz of N. Am., Inc.,* 788 F.2d 918, 921 (3d Cir. 1986). The Court can grant Farra's requested relief only if "the effect of the evidence is not only sufficient to meet his burden of proof, but is overwhelming, leaving no room for the jury to draw significant inferences in favor of [Stanley]." *Gay v. Petsock,* 917 F.2d 768, 771 (3d Cir.1990).

 In considering a motion for a new trial, a court must refrain from interfering with the jury's verdict unless it is clear that "the jury has reached a seriously erroneous result.'" *Lind v. Schenley Indus., Inc.,* 278 F.2d 79, 89 (3d Cir.) (in banc) (quoting 6 *Moore's Federal Practice* 3819 (2d ed.)), *cert. denied,* 364 U.S. 835, 81 S.Ct. 58, 5 L.Ed.2d 60 (1960). Though the Federal Rules of Civil Procedure do not delineate the specific grounds upon which a new trial may be granted, referring, rather, to the reasons existing under the common law, *see* Fed. R.Civ.P. 59(a), the grounds upon which Farra makes his motion, that the verdict was against the weight of the evidence and that there was substantial error in the admission of evidence and in the jury charge, are proper ones. *See Lind,* 278 F.2d at 89–90; *Northeast Women's Ctr., Inc. v. McMonagle,* 689 F.Supp. 465, 468 (E.D.Pa.1988), *modified,* 868 F.2d 1342 (3d Cir.1989). *See generally* 11 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil* § 2805 (1973). The court has broad discre-

tion in deciding a motion for a new trial when the proffered ground is legal error. *See Klein v. Hollings,* 992 F.2d 1285, 1289–90 (3d Cir.1993). Such discretion is narrowed when the claim is that the verdict is against the weight of the evidence, for in that situation, the court is substituting its own judgment on the facts for that of the jury. *See id.* at 1290; *Lind,* 278 F.2d at 90. The court's inquiry in evaluating a motion for a new trial on the basis of trial error is twofold. It must first determine whether an error was made in the course of the trial, and then must determine "whether that error was so prejudicial that refusal to grant a new trial would be 'inconsistent with substantial justice.'" *Bhaya v. Westinghouse Elec. Corp.,* 709 F.Supp. 600, 601 (E.D.Pa.1989) (quoting Fed.R.Civ.P. 61), *aff'd,* 922 F.2d 184 (3d Cir.1990), *cert. denied,* ——— U.S. ———, 111 S.Ct. 2827, 115 L.Ed.2d 997 (1991); *see Gebhardt v. Wilson Freight Forwarding Co.,* 348 F.2d 129, 133 (3d Cir.1965) ("If the evidence in the record, viewed from the standpoint of the successful party, is sufficient to support the jury verdict, a new trial is not warranted merely because the jury could have reached a different result.").

## III. DISCUSSION

### 1. *Farra's motion for judgment as a matter of law*

 Farra contends that Stanley's admission that the contact trip gun did not contain a safety feature present in the sequential trip gun, i.e., the sequential trip mechanism, establishes as a matter of law that the product was defective. The question, however, is not whether the sequential trip gun was a *safer* product than the contact trip gun, but rather, whether the contact trip gun " 'lacked any element necessary to make it safe' " for its intended use. *Dillinger v. Caterpillar, Inc.,* 959 F.2d 430, 436 (3d Cir.1992) (quoting *Azzarello v. Black Bros. Co.,* 480 Pa. 547, 391 A.2d 1020, 1027 n. 12 (1978)); *Marshall v. Philadelphia Tramrail Co.,* 426 Pa.Super. 156, 626 A.2d 620, 625–26 (1993).[2] Therefore, finding that the sequential trip gun is "safer"

---

**2.** Sitting in diversity, the Court is obliged to apply the substantive product liability law of Pennsylvania. *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938).

than the contact trip gun in this case does not command a finding that the contact trip gun is defective.

Farra's invocation of *Habecker v. Clark Equipment Co.,* 942 F.2d 210 (3d Cir.1991), is in vain. In *Habecker,* the survivors of a deceased forklift operator brought a product liability action against the manufacturer of a forklift that had flipped over and killed the decedent. The Third Circuit ruled that evidence of a safer design that was available at the time the forklift was designed was admissible to assist in establishing the forklift's defectiveness. *See id.* at 215. Farra reads *Habecker* to permit the introduction of evidence that a feasible safer design, the sequential trip, existed when the nail gun was designed, and that the existence of such a design renders the gun unsafe. However, *Habecker* was a *crashworthiness* case, where proof of an alternative, safer design that is "practicable under the circumstances," *Huddell v. Levin,* 537 F.2d 726, 737 (3d Cir.1976), is an essential element of a plaintiff's case. *See Habecker,* 942 F.2d at 214–15; *Huddell,* 537 F.2d at 737–38. Because this is a non-crashworthiness product liability case, the focus must remain not on the existence of a safer design but on whether the product at issue contains all of the elements necessary to make it safe for its intended use.

■■ Even if the court were to apply *Habecker* in the instant case, it would not follow that Stanley's admission, i.e., that the sequential trip gun contains a safety feature not present in the nail gun at issue, establishes that the contact trip gun was defective. A product must be evaluated in light of its *intended use* when determining its safety. *See Marshall,* 626 A.2d at 625–26. In this case, as the defendant's expert testified, a sequential trip mechanism would have rendered the nail gun unsuitable for its *intended* use, i.e., bump nailing of large numbers of roof shingles. *See* Tr. of 12/2/92 at 182–85. Drawing all reasonable inferences in favor of Stanley, the prevailing party, Farra has failed to show that there was insufficient

evidence from which the jury could conclude the nail gun was not defective.[3]

### 2. *Farra's motion for a new trial*

#### a. *The sole causation charge*

■■■■■ Farra claims that the Court erred in charging the jury on the issue of sole causation, alleging that the charge injected contributory negligence principles into the case and that it was unsupported by the evidence. As a threshold matter, a party challenging a jury instruction on a particular matter must establish that the jury in fact reached that matter. A motion for a new trial on issues that a jury did not reach will not be granted. *See Markovich v. Bell Helicopter Textron, Inc.,* 805 F.Supp. 1231, 1241 (E.D.Pa.), *aff'd without op.,* 977 F.2d 568 (3d Cir.1992); *Field v. Omaha Standard, Inc.,* 582 F.Supp. 323, 332 (E.D.Pa.1983), *aff'd without op.,* 732 F.2d 145 (3d Cir.), *cert. denied,* 469 U.S. 828, 105 S.Ct. 113, 83 L.Ed.2d 56 (1984). The jury in the instant case answered the first of the three written interrogatories the Court propounded, which presented the issues of defect and causation to the jury in the conjunctive form as follows:

**Question No. 1:**

Have the plaintiffs proved by a preponderance of the evidence that the nail gun used by Mr. Farra on the date of his accident was defective when it left the control of Stanley–Bostitch and that the defective condition of the nail gun was a substantial factor in causing Mr. Farra's injury?

YES ___ NO ___

If you answer "No" to Question Number 1, do not answer any more questions. If you answer "Yes" to Question Number 1 go on to Question Number 2 and Question Number 3.

The jury answered this interrogatory negatively, and did not answer any other interrogatory, as the Court had instructed. For Farra's argument to lie, he must proceed on the assumption that the jury found the nail gun to be defective, but failed to find that the defect was a substantial factor in causing the

---

**3.** Since the Court is denying Farra's motion on the basis that defect was not established as a matter of law, it does not reach Farra's conten-

tion that causation and lack of misuse were also established.

accident. The Court disagrees that this assumption is warranted. Because there was sufficient evidence in the record that the nail gun did not lack any feature needed to make it safe for its intended use, *see supra* page 1027, and viewing the evidence "from the standpoint of [Stanley,] the successful party," *Gebhardt,* 348 F.2d at 133, a reasonable jury could have found that the nail gun was *not* defective, thereby not reaching the issue of causation. This result would have been entirely consistent with the jury charge that specifically instructed the jury to determine the issue of defect before it considered causation. *See* Tr. of 12/3/92 at 151–52 ("If you find that there was no defect in the nail gun, you will not reach the issue of causation.");[4] *see also Gallick v. Baltimore & Ohio R.R. Co.,* 372 U.S. 108, 121, 83 S.Ct. 659, 667, 9 L.Ed.2d 618 (1963) (holding that an interrogatory must be examined "in the context of the charge"); *Halprin v. Mora,* 231 F.2d 197, 201 (3d Cir.1956) (" 'A special verdict, finding, or answer must be construed ... in the light of, and in connection with, the pleadings, instructions, the issue or question submitted.... ' ") (quoting 89 C.J.S., Trial 569(b) (1955)).

■ Finally, to the extent that Farra indirectly suggests that the form of interrogatory was in error, this objection was waived by Farra when he specifically approved it before it was submitted to the jury. *See* Tr. of 12/3/92 at 57; *Scott v. Plante,* 641 F.2d 117, 124–25 (3d Cir.1981) ("Since the defendants did not in the trial court object to the form of the interrogatories either before or after the verdict, and do not on appeal argue that they were prejudiced by the way the questions were formulated, we must read them in a manner which reconciles them with the jurors' probable intention in light of the Court's instructions."), *vacated on other grounds,* 458 U.S. 1101, 102 S.Ct. 3474, 73 L.Ed.2d 1362 (1982). Therefore, because Farra cannot show the jury reached the issue of causation, any error in the Court's charge on sole causation was harmless. *See* Fed. R.Civ.P. 61.

■ Even assuming, *arguendo,* that the jury reached the causation issue, the Court finds that there was no error in the instruction given. Defendant challenges one sentence of the instruction given to the jury on causation. The instruction, with the sentence to which Farra objects underscored, was as follows:

> As I said, if you find the nail gun was defectively designed, you will then decide whether the defective design was a substantial factor in causing Mr. Farra's injury. This is what the law recognizes as legal cause. A substantial factor is an actual real factor, although the result may be unusual or unexpected, but it is not an imaginary or fanciful factor or a factor having no connection or only an insignificant connection with the injury.
>
> If on the other hand you find that the defect which you have found in the nail gun was not a substantial factor in causing injury to Mr. Farra, then you should find for the Stanley–Bostitch. *For instance, if you were to conclude that Mr. Farra's conduct was the only cause of his injury, you should find for the defendant, for in that event you would have found that the defect in the nail gun did not cause his injury.*

Tr. of 12/3/1992 at 152 (emphasis added).

This instruction was informed by the decision of the Third Circuit in *Dillinger v. Caterpillar, Inc. Dillinger* held that a plaintiff's conduct is not admissible to rebut a plaintiff's claim that a defective product caused him

---

4. The Court repeatedly instructed the jury that it was to consider defect first, and then, if the jury found the nail gun to be defective, to examine causation:

In addition, you are instructed that the fact that Mr. Farra has these injuries does not in itself prove that the alleged defect in the nail gun caused these injuries. *If you find that the product was defective, ... you must then decide whether the defective design was a substantial factor in causing Mr. Farra's injuries.* Now,

the mere fact that I charge you regarding causation does not suggest that you should find for or against the plaintiffs on the issue of alleged defects. *If you find that there was no defect in the nail gun, you will not reach the issue of causation....* As I said, if you find the nail gun was defectively designed, you will *then* decide whether the defective design was a substantial factor in causing Mr. Farra's injury.

Tr. of 12/3/92 at 151–52 (emphasis added).

injury when the plaintiff's conduct consists of failure to take steps to avoid injury from the defective product. *Dillinger* found that "here the evidence was compelling that the defect ... *rather than Dillinger's conduct,* triggered the accident." *Dillinger,* 959 F.2d at 442 (emphasis added). By strong implication, therefore, the Court concludes that under *Dillinger* the opposite is equally true—a plaintiff's conduct is admissible to rebut causation where the plaintiff's conduct, rather than the defect, "actively contributed," *id.,* to the cause of the incident that produced the injury. To put it another way, the plaintiff's conduct was admissible to demonstrate that *plaintiff's conduct alone, and not the defect,* set the incident in motion. *See Kern v. Nissan Industrial Equip. Co.,* 801 F.Supp. 1438, 1441–43 (M.D.Pa.1992); *Foley v. Clark Equip. Co.,* 361 Pa.Super. 599, 523 A.2d 379, 393 *allocatur denied,* 516 Pa. 614, 531 A.2d 780 (1987); *Bascelli v. Randy, Inc.,* 339 Pa.Super. 254, 488 A.2d 1110, 1113 (1985); *cf. Van Buskirk v. Carey Canadian Mines, Ltd.,* 760 F.2d 481, 492–92 (3d Cir.1985) (discussing the sole causation defense in a product liability action based on a failure to warn theory).[5] Therefore, a reasonable jury could have found that unlike the *Dillinger* plaintiff, who simply failed "to arrest the accident [already] set in motion," *Dillinger,* 959 F.2d at 444, plaintiff's conduct herein triggered the accident.

This was the reading of *Dillinger* made by the district court for the Middle District of Pennsylvania in *Kern v. Nissan Industrial Equipment Co.* In *Kern,* the plaintiff alleged that the forklift which ran him over was defectively designed because it lacked any auditory or visual warnings. The defendant, the forklift's manufacturer, sought to rebut plaintiff's claim by introducing evidence that the driver of the forklift, one of plaintiff's co-workers, had been negligent in failing to look where he was going when he ran over the plaintiff with the forklift. *See* 801 F.Supp. at 1440. The court held that evidence of the co-worker's negligence was admissible to rebut causation on the theory that such evidence should be admitted where "the alleged contributory negligence precipitated a series of events resulting in harm to the plaintiff." *Id.* at 1441. Judge Rambo distinguished *Dillinger* on the same grounds that the Court does here—*Dillinger* dealt with a plaintiff's alleged failure "to arrest an accident already set in motion." *Id.* at 1442. Like the careless forklift operator in *Kern,* Farra initiated the sequence of events that led to his injury by hanging the nail gun on the roof jack. Therefore, the reference to sole cause in the Court's instruction on causation was not in error.

 Even if an instruction is legally correct, however, a court may not give it unless the instruction is supported by evidence in the record. *See Ballay v. Legg Mason Wood Walker, Inc.,* 925 F.2d 682, 694 (3d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 79, 116 L.Ed.2d 52 (1991). In that connection, Farra argues that: 1) if the nail gun was defective, the defect must have been at least *one* of the causes of the injury, since cure of the defect would have prevented injury; 2) if the defect was a cause of the injury, it would not be possible for plaintiff's conduct to have been the *sole* cause of his harm; and 3) the Court's instruction was therefore erroneous because it allowed the jury to consider whether plaintiff was the sole cause of his harm even if it found a defect. This argu-

---

5. The Court's conclusion is not in conflict with Judge Pollak's recent memorandum in *Kramer v. Raymond Corp.,* 840 F.Supp. 333 (E.D.Pa.1993). In *Kramer,* Judge Pollak acknowledged the Third Circuit's criticism of *Foley* in the dicta of *Dillinger* and held that it correctly interpreted Pennsylvania law. *See id.* at 334–35. However, Judge Pollak's refusal to permit the introduction of the plaintiff's contributory negligence for purposes of establishing *proximate cause,* of which there can be more than one, *see Jefferson Bank v. Progressive Casualty Ins. Co.,* 965 F.2d 1274, 1284 (3d Cir.1992), is substantially different than the in-

stant case, were evidence of Farra's conduct was introduced to show his actions were the *sole* cause of his injury. Thus, that the defendant in *Kramer* was not allowed to adduce evidence that the plaintiff's conduct in placing his foot outside of his forklift's operator compartment was a proximate cause, i.e., a substantial factor, in causing plaintiff's injuries, does not mean that Stanley should not have been allowed to introduce evidence showing that Farra's conduct was the proximate *and* sole cause, rendering a defect in the nail gun irrelevant. Nothing in the *Kramer* memorandum would indicate that a defense of sole causation was tenable in that case.

ment would have merit [6] had Farra not submitted to the jury, as one of his four· theories, that the lack of a hook from which to hang the nail gun rendered the product defective. Farra's choice to proceed to the jury on this theory warranted· the instruction.

██ Farra claimed that the defect of failing to provide a hook from which the nail gun could be hung without depressing the trigger was a substantial factor in causing plaintiff's injury. Farra testified at trial that at the time of the incident, in conformity with his customary practice, he rested the nail gun on its trigger when he hung the gun from the roof jack. Importantly, though, Stanley's expert, Robert Olmstead, see *infra* pages 24–28 (discussing Olmstead's testimony), testified that several alternative methods of safely hanging the nail gun were available to Farra even without the proposed hook. Olmstead pointed out that the nail gun could have been hung by looping the gun's air hose around the roof jack, or that the gun could have been hung from the area behind the trigger. Olmstead also opined that the air hose could have been run up the opposite side of the house from the one on which Farra was working, thereby allowing Farra to hang the nail gun from the hose by allowing the gun to dangle. Finally, Olmstead pointed out that Farra could have simply disconnected the air hose when· the nail gun was not in use, or simply rested the gun on a plank rather than hanging it from a roof jack by its trigger. Accordingly, the evidence showed that Farra did not use existing means of safely storing the. nail gun.

At the same time, there is nothing in the evidence to suggest that Farra would have used a hook had one been present. In the face of plaintiff's failure to avail himself of the other hanging features of the gun "hundreds of times," Tr. of 12/1/92 at 45–46, there was sufficient evidence from which a reasonable jury could have concluded that Farra would not have used the hook even if the gun had been equipped with one. Stated another way, there was sufficient evidence from which the jury could have concluded that Farra would have been injured even if the gun had been equipped with a hook.

This was the situation in *Sherk v. Daisy–Heddon,* 498 Pa. 594, 450 A.2d 615 (1982). In *Sherk,* a fourteen-year-old boy shot and killed a friend with a BB gun while "fooling around." The administratrix of the estate of the decedent brought an action against the manufacturer of the gun claiming that the gun was defective in failing to provide an adequate warning of the gun's "lethal properties" and that, therefore, the failure to warn was the cause of the decedent's death.[7] The Court concluded that "where, as here, the lethal propensity of a gun was known or should have been known to the user, liability cannot be imposed upon the manufacturer merely because the manufacturer has failed to warn of that propensity." *Id.* 450 A.2d at 618. In other words, the accident would have occurred even if a warning had been included. In the instant case, a reasonable jury could have concluded that the addition of a hook would not have had any effect on Farra's conduct, and consequently, that Farra's conduct was the sole cause of the inci-

---

6. Farra is correct that if the· nail gun had been equipped with a sequential trip device, or a trigger guard, or a button on the trigger, then Farra's conduct could not have been the *sole* cause. For example, if the jury had found that the nail gun was defective due to the lack of a contact trip mechanism, the accident would have not happened *regardless* of how Farra had acted. That is, with a sequential trip device, the accident could not have occurred due to the placement of the nail gun on the roof jack with the trigger depressed. Stanley admitted as much at trial. *See* Tr. of 12/2/92 at 126–27. Thus, if the lack of the contact trip mechanism was the reason for the nail gun's defective condition, the issue of sole cause could not have arisen. However, as discussed in the text *infra,* the instruction was applicable to Farra's claim that the

absence of a. hook rendered the product defective.

7. At trial, the boy who shot the weapon, testified that he

> was aware that "depend[ing] on how many times you pumped [the rifle] up," the BBs fired from the rifle could shatter bottles ... and pierce through ... cans. He also testified that he had known that the air rifle was "some[what more] powerful" than the spring BB guns he had previously used. Moreover, he knew that a BB fired from the Power King could blind a person and that he should never point a gun at anyone.

*Sherk,* 450 A.2d at 617–18.

dent. The Court finds that the charge on sole cause was necessitated by Farra's choice to present to the jury the alleged defect of the lack of a hook and that the charge was properly supported by the evidence in the record.

### b. *The misuse charge*

Farra also claims that the Court erred in instructing the jury on his alleged misuse of the nail gun. While acknowledging that, under Pennsylvania law, a defendant can introduce evidence that a plaintiff misused a product to defeat a product liability claim, *see Dillinger*, 959 F.2d at 445 (citing *Sherk*), Farra claims that the record was devoid of any evidence that he misused the nail gun. Furthermore, argues Farra, even if hanging the gun by its trigger was a misuse, it was a foreseeable one, and thus does not shield Stanley from liability, citing *Eshbach v. W.T. Grant's & Co.*, 481 F.2d 940, 943–45 (3d Cir.1973) and *Suchomajcz v. Hummel Chem. Co.*, 524 F.2d 19, 28 & n. 8 (3d Cir.1975).

The Court's instruction on misuse, by request of Stanley and with *the consent of Farra, see* Tr. of 12/3/92 at 57–60, presented the issue of misuse to the jury as an affirmative defense, with the burden resting on Stanley, *see id.* at 155–56.[8] *Cf. Lewis v. Rego Co.*, 757 F.2d 66, 70–71 (3d Cir.1985) (holding that evidence of misuse should be considered in determining issues of defectiveness and proximate cause, not as a separate defense). Even assuming it was error to submit to the jury the issue of misuse as an affirmative defense (and notwithstanding Farra's consent), Farra's argument must be rejected. The jury was instructed that misuse was an affirmative defense, to be reached only if the jury found that the nail gun was both a defective product and the cause of Farra's injuries. *See* Tr. of 12/3/92 at 154–156. The Court also read the interrogatories to the jury, including the portion that instructed the jury to answer interrogatory number three, the misuse interrogatory, only if it answered interrogatory number one, the defect and causation interrogatory, in the affirmative. *See id.* at 156. It is impermissible to assume, as Farra apparently does, that the jurors disregarded the charge and the instructions in the interrogatories and, despite the Court's specific command to the contrary, reached the issue of misuse. *See City of Los Angeles v. Heller*, 475 U.S. 796, 798, 106 S.Ct. 1571, 1572–73, 89 L.Ed.2d 806 (1986) (per curiam). Any error in the instruction was thus rendered harmless by the fact that the jury did not reach the issue. *See Markovich*, 805 F.Supp. at 1241.

Finally, the instruction itself was supported by the record. Given Farra's testimony concerning his use of the nail gun, the unlikely sequence of events that led to Farra's injury, and Stanley's expert's opinion that hanging the gun by its trigger was not an intended use, a reasonable jury could have found that hanging a nail gun with its trigger depressed, when a number of alternative methods of hanging the gun existed, was a misuse of the product. Farra's expert's opinion to the contrary, i.e., that the hanging of

---

8. The Court and the attorneys for the parties, George F. Schoener for Farra and John R. Penders for Stanley, engaged in the following colloquy:

　PENDERS: Your Honor, I would ask, as I have in the suggested interrogatories which we submitted, that the issue of misuse also be submitted by way of interrogatory ... [a]s a separate affirmative defense.

　SCHOENER: Your Honor, the *Lewis* case says it's not a separate defense per se .....

　. . . .

　THE COURT: That's, Mr. Penders, the way I view the case, that intended use is part of the plaintiff's ... case. And if [Mr. Schoener] has not shown that Mr. Farra used the product for its intended use, then ... the verdict should be entered for the defendant.

　. . . .

　PENDERS: ... I believe that [*Dillinger*] say[s] that the defendant has the burden of establishing misuse as well as assumption of the risk.

　THE COURT: Well, let me ask Mr. Schoener, who has the burden of proof on misuse?

　SCHOENER: You Honor, I will agree with Mr. Penders that the burden of proof is on the defendant.

　. . . .

　THE COURT: ... I want to be sure that we're clear, at the request of the defendant we will charge the jury that misuse of the product is an affirmative defense. And the defendant will have the burden of the proof by the preponderance of the evidence to show that the plaintiff has misused the product.

Tr. of 12/3/92 at 57–60.

the gun by its trigger was within the gun's intended use, *see Griggs v. BIC Corp.*, 981 F.2d 1429, 1433–34 & n. 7 (3d Cir.1992), was simply rejected by the jury.

#### c. . *The assumption of risk defense*

 A similar conclusion can be reached regarding Farra's exception to the jury charge on the assumption of the risk defense. Farra does not question the validity of this defense under Pennsylvania law. *See Dillinger*, 959 F.2d at 445; *Berman v. Radnor Rolls, Inc.*, 374 Pa.Super. 118, 542 A.2d 525, 532 (1988). Rather, he argues that because there was no evidence in the record to support the defense, the charge was given in error. This error, Farra argues, prejudiced plaintiff's case because the jury may have considered this defense in determining the issue of causation.

Farra's argument on this issue suffers from the same infirmity that troubles the exception to the misuse charge. Because the jury answered interrogatory number one, dealing with defect and causation, in the negative, the question of assumption of the risk was never reached. Therefore, even accepting the validity of Farra's argument on the issue, the charge was harmless error. *See* Fed.R.Civ.P. 61. Plaintiff's claim that, despite the Court's instructions, the jury "may" have considered the assumption of the risk defense when examining causation is impermissible speculation. The Court must assume that the jurors acted in accordance with the instructions they were given. *See City of Los Angeles*, 475 U.S. at 798, 106 S.Ct. at 1572–73.

Furthermore, on this record, there was evidence to support the charge. Farra testified he knew the gun was ready to fire when its trigger was depressed, his expert admitted, and the in-court demonstration showed, that the trigger was visible when it was hung on the jack in the manner described by Farra, and the in-court demonstration showed that the trigger would always be depressed when hung on the roof jack in the manner described by Farra. That Farra merely de-

nied being aware of the trigger's position in and of itself did not foreclose a reasonable jury from finding that plaintiff did in fact assume the risk of his injury. *See Wagner v. Firestone Tire & Rubber Co.*, 890 F.2d 652, 657 (3d Cir.1989); *Green v. Sanitary Scale Co.*, 431 F.2d 371, 374 (3d Cir.1970).

#### d. *The testimony of Robert Olmstead*

At trial, Stanley presented one witness, Robert Olmstead, the director of product engineering at Stanley–Bostitch. Through voir dire, defendant established that Olmstead had almost thirty years of experience in the design, engineering, and safety of power tools. The Court qualified him as an expert in the fields of mechanical engineering, power tools, and pneumatic nailers. *See* Tr. of 12/2/1992 at 167. During direct examination, Olmstead testified, over Farra's objection, that it was his opinion that the nail gun was not being used in a "reasonably foreseeable intended use." *See id.* at 193–94. Farra now renews his objection that the testimony was improperly admitted, giving a number of grounds in support of his argument.

 Farra argues that Olmstead was incompetent to testify on the issue because he had no personal knowledge of the decisionmaking process involved in designing the nail gun. Thus, Farra contends, Olmstead lacked the predicate to testify as a fact witness or as a lay expert. This argument overlooks that because Olmstead was qualified as an expert witness, he was not required to base his opinion on personal knowledge of the events leading to the development of the nail gun. *See* Fed.R.Evid. 703; *United States v. Theodoropoulos*, 866 F.2d 587, 590 (3d Cir.1989). Farra counters that, even if Olmstead was qualified to render an expert opinion, his testimony was still inadmissible because it lacked any basis in fact, and because he did not testify as to what was the nail gun's intended use. This contention is factually incorrect. Prior to the rendering of his opinion, Olmstead *did* testify as to the nail gun's intended use. *See* Tr. of 12/2/92 at 183.[9] And absent the Court's directive that

---

9. On direct examination, Stanley's counsel questioned Olmstead as follows:

Q: Okay. What are the intended uses or applications of the contact trip nailers including the N55?

Olmstead state the factual basis for his opinion, Olmstead was not required to provide the basis during direct examination. *See* Fed.R.Evid. 705. If Farra had wanted to inquire through cross-examination into the basis for that opinion, the Federal Rules of Evidence would have allowed that inquiry. *See id.; Lewis,* 757 F.2d at 74. Farra did not avail himself of that opportunity and it will not help him obtain a new trial to raise the objection at this point in the proceedings. *See United States v. Santarpio,* 560 F.2d 448, 454–55 (1st Cir.) (holding that a party's failure to cross-examine an expert on the factors relied upon in making an opinion did not mean the conclusion could not be credited), *cert. denied sub nom. Schepici v. United States,* 434 U.S. 984, 98 S.Ct. 609, 54 L.Ed.2d 478 (1977).

■ Farra also contends that defense counsel's questions to Olmstead relating to the warnings and instruction manual for the operation of the nail gun injected into the proceedings notions of plaintiff's contributory negligence in failing to read the warnings and the manual. However, the reference to these items was not made in regard to Farra's conduct. Rather, the questions were directed to elicit the intended uses of the nail gun. Counsel did not argue to the jury, nor was the jury instructed, that Farra had a duty to read the warnings and the instruction manual, or that his failure to do so should somehow be considered by the jury. In fact, the Court specifically instructed the jury that any negligence or carelessness on Farra's part was irrelevant in the jury's determination of plaintiff's claim. *See* Tr. of 12/3/92 at 154–55.

■ Farra further argues that the expert testimony established that the manner in which the injury occurred was unforeseeable, a line of inquiry that is irrelevant under

A: Contact trip nailers are used anytime that the nailing requirements are to drive a large number of nails and usually where the nails are relatively close together, certainly, roofing, but decking, sheathing, pallet manufacture, framing. There are certain furniture applications where contact trip nailers are the right nailer for the application.
Tr. of 12/2/92 at 183.

*Eshbach, see* 481 F.2d at 943, and that again allowed the sub silentio introduction of contributory negligence concepts under the guise of misuse. This argument, however, is based on a mistaken interpretation of Olmstead's testimony. Again, Olmstead's testimony was not directed to the foreseeability of the injury, but rather, to the intended use of the product, and it was elicited to establish the claim by defendant that Farra had misused the product. *See id.* (stating that "the proper limits of responsibility for the defendant-seller here is whether the 'use' to which the product was put was intended or foreseeable (objectively reasonable) by the defendant"). Because Stanley was entitled to establish that Farra's conduct was not reasonably foreseeable, and that his conduct, therefore, constituted misuse of the nail gun, Olmstead's testimony was properly admitted.

Farra also claims that Olmstead's testimony was inadmissible because he was not specifically asked to view the foreseeability determination "with the wisdom of hindsight," *Holloway v. J.B. Systems, Ltd.,* 609 F.2d 1069, 1074 n. 14 (3d Cir.1979). This failure, according to Farra, allowed Olmstead to testify from an incorrect perspective. However, the footnote and accompanying text in *Holloway* cited by Farra are not apposite in that they deal with the propriety of jury instructions, and do not dictate the modality of interrogation.[10] Of course, nothing prevented Farra from inquiring on cross-examination whether Stanley's expert spoke with "the wisdom of hindsight."

■ Finally, Farra repeats his assertion that allowing Olmstead to testify that the nail gun was safe when used "in accordance with the instructions and warnings that are provided with it," Tr. of 12/2/92 at 191–92, impermissibly introduced contributory negligence into the case. According to Farra, the effect of the opinion was to allow the jury to

10. The formulation contemplated by Farra is not only *not* required but may well intrude on the Court's function to instruct the jury on the applicable law. *See United States v. Scop,* 846 F.2d 135, 140 (2d Cir.1988) (" 'It is not for witnesses to instruct the jury as to applicable principles of law, but for the judge.' ") (quoting *Marx & Co. v. Diners' Club, Inc.,* 550 F.2d 505, 509–10 (2d Cir.1977)).

find in favor of the defendant if they found that Farra's acknowledged failure to read the manual constituted negligence on his part. This conclusion is erroneous. The jury was specifically instructed to examine Farra's conduct solely for purposes of establishing causation. As already stated, Farra's failure to read the manual was irrelevant to that issue. Testimony concerning the warnings and manual was properly admitted to determine whether or not the nail gun was defective without implicating plaintiff's conduct. *See Dillinger,* 959 F.2d at 440 n. 18; *Holloway,* 609 F.2d at 1071 n. 6. Any improper inference the jury could have drawn after hearing Olmstead's testimony would have been contrary to the jury charge, which instructed that Farra's conduct was only to be considered in determining causation. Again, the Court will not speculate that the jury disregarded the Court's instructions.

### e. *Verdict against the weight of the evidence*

The plaintiff's final contention is that the verdict is against the weight of the evidence. The Court is empowered to grant a new trial on that basis "only where a miscarriage of justice would result if the verdict were ·to stand." *Klein,* 992 F.2d at 1290; *see also Shushereba v. R.B. Indus., Inc.,* 104 F.R.D. 524, 528 (W.D.Pa.1985) ("Only where the jury's verdict is unsupported by the facts or manifestly and palpably against the evidence, is a new trial necessary."). The Court's discretion in the instant case, which is relatively "simple and within a layman's understanding," *Klein,* 992 F.2d at 1290, is tightly circumscribed. Given the evidence presented, the Court cannot conclude that the jury's verdict on either defect or causation is against the weight of the evidence, given the way the accident occurred and the manner in which Farra used the nail gun.

## IV. CONCLUSION

For the foregoing reasons, the Court must reject all of plaintiff's arguments and deny his motion for judgment as a matter of law as well as his alternative motion for a new trial.

## APPENDIX

### INTERROGATORIES TO THE JURY

We, the jury in the above captioned case, unanimously answer the following question or questions as follows:

**Question No. 1:**

Have the plaintiffs proved by a preponderance of the evidence that the nail gun used by Mr. Farra on the date of his accident was defective when it left the control of Stanley–Bostitch and that the defective condition of the nail gun was a substantial factor in causing Mr. Farra's injury?

YES___ NO___

If you answer "No" to Question Number 1, do not answer any more questions. If you answer "Yes" to Question Number 1 go on to Question Number 2 and Question Number 3.

**Question Number 2:**

Has the defendant proved by a preponderance of the evidence that Mr. Farra assumed the risk of his injury?

YES___ NO___

**Question Number 3**

Has the defendant proved by a preponderance of the evidence that Mr. Farra misused the product in an unforeseeable, abnormal manner.

YES___ NO___

If you answer "Yes" to Question Number 1 and "No" to Question Number 2 and Question Number 3, you will be returning a verdict for plaintiffs. If you answer the questions any other way, you will be returning a verdict for defendant.

_____
(Signature of Foreperson)

DATED: _____, 1992